BELINDA I. MATHIE (IL Bar No. 6275461)
*PRO HAC VICE* APPLICATION PENDING
Email: MathieB@sec.gov
JOHN E. BIRKENHEIER (IL Bar No. 6270993)
*PRO HAC VICE* APPLICATION PENDING
Email: BirkenheierJ@sec.gov
LEE FARNSWORTH (IL Bar No. 6332666)
*PRO HAC VICE* APPLICATION PENDING
Email: FarnsworthL@sec.gov
175 West Jackson Blvd, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Attorneys for Plaintiff
United States Securities and Exchange Commission

LOCAL COUNSEL
Alec Johnson (Cal. Bar No. 270960)
Email: JohnsonStu@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>HEDONOVA LLC, and HEDONOVA ADVISORS LLC<br><br>Defendants. | Case No. 2:24-cv-05293<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMPLAINT 1

Plaintiff Securities and Exchange Commission ("SEC") alleges as follows:

## JURISDICTION AND VENUE

1. The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)], Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)], and Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) and 80b-14].

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d), and 22 of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Sections 209(d), 209(e)(1), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1), and 80b-14].

3. Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in, and the means and instruments of, interstate commerce, or of the mails, in connection with the acts, practices, and courses of business alleged in this Complaint.

4. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa] and Section 214 of the Advisers Act [17 U.S.C. § 80b-14]. Acts, practices, and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Central District of California and elsewhere. Moreover, of the victims of Defendants' alleged securities violations the SEC has identified thus far, a total of approximately 28 reside in California, with approximately 11 residing in this district.

## SUMMARY

5. Defendant Hedonova LLC ("Hedonova Fund" or "the Fund") represents to investors that it is a "mutual fund, but for alternative assets." From at least

November 2021 to the present, Hedonova Fund engaged in a fraudulent scheme by raising money from investors while making materially false statements about the Fund's investments and about its operations and governance, including the identities of the Fund's auditor, administrator, custodian of funds, and bankers. During this period, accounts held in the name of Hedonova Fund received at least $12.5 million. At least $3.8 million of this amount was raised from confirmed or potential investors. Hedonova Fund claims that it achieves extraordinary investment returns.

6. Defendant Hedonova Advisors LLC ("Hedonova Advisors") was formed in August 2022. It became an SEC-registered investment adviser by filing a Form ADV on September 29, 2023. Hedonova Advisors makes materially false statements about itself and about Hedonova Fund in its Form ADV.

7. The Form ADV for Hedonova Advisors lists Alexander Cavendish ("Cavendish"), Munish Kumar ("Kumar"), and Suman Bannerjee ("Bannerjee") as the principals of Hedonova Fund. It also identifies those three individuals as control persons of, and persons with an ownership interest in, Hedonova Advisors. Hedonova Fund represents that these individuals are located outside of the United States. They all declined to appear for testimony in the United States during the investigation of this matter.

8. The fraudulent investment scheme perpetrated by Hedonova Fund and Hedonova Advisors appears to be ongoing. Hedonova Fund's website was publicly available at least as late as June 7, 2024, and the Fund is known to have received investments as recently as February 2024. Hedonova Advisors sent at least one investor a quantitative report as recently as May 1, 2024, purporting to address the performance of Hedonova Fund in April 2024.

9. By engaging in the conduct described above, Defendants have violated, and apparently continue to violate, numerous antifraud provisions of the federal securities laws.

10. The SEC brings this action to hold Hedonova Fund and Hedonova

Advisors responsible for their violations of the federal securities laws.

11. The SEC seeks to enjoin each of the Defendants in this action from violations of the federal securities laws and seeks disgorgement of their ill-gotten gains, along with prejudgment interest and civil penalties.

## THE DEFENDANTS

12. **Hedonova LLC** is a purported investment fund formed in April 2021 under the laws of Delaware. In September 2023, it was domesticated in Idaho. Hedonova Fund has variously listed its principal place of business as Dover, Delaware and Meridian, Idaho, and has purported to do business in Los Angeles, California. In May 2024, Hedonova Fund was the subject of a California state administrative desist and refrain order in connection with its securities investment business. The California order found, among other things, that Hedonova Fund made untrue statements of material fact in connection with the offer and sale of its securities.

13. **Hedonova Advisors LLC** is an SEC-registered investment adviser to the Fund. Hedonova Advisors was formed in August 2022 under the laws of Delaware. It registered with the SEC by filing a Form ADV approximately a year later, on September 29, 2023. The September 29, 2023 Form ADV identified an address in Los Angeles, California as its principal office and place of business. On March 29, 2024, Hedonova Advisors filed an updated Form ADV listing an address in Post Falls, Idaho as its principal office and place of business.

## FACTS

14. The definition of a "security" under the securities laws includes, among other instruments, "investment contracts."

15. Investment contracts are instruments through which a person invests money in a common enterprise with expectations of profits or returns produced by the entrepreneurial or managerial efforts of others.

16. Between at least November 2021 and February 2024, Hedonova

Advisors and Hedonova Fund offered and sold securities in the form of limited liability company membership interests in Hedonova Fund, through general solicitation on the Fund's website.  The limited liability company membership interests in Hedonova Fund are investment contracts.

17. Hedonova Fund solicited investments of at least $5,000, later raised to $10,000.

18. Hedonova Fund informed investors that their money would "purchase parts of the fund, called 'blocks,'" and that the investors would "make a profit when the overall value of [Hedonova] increases."

19. Individuals invested money in response to the Fund's solicitations.  The money they invested was pooled into accounts with an online payment processor and an online money transfer service.  Some of the pooled investor money was subsequently transferred into Hedonova Fund accounts at various regional and online banks.

20. In addition, in Item 5.G of its Form ADV, Hedonova Advisors self-identified as being engaged in "Portfolio management for pooled investment vehicles (other than investment companies)."

21. Hedonova Fund offered membership interests to investors through a Private Offering Memorandum dated January 2021 ("January 2021 PPM"), and later, a Private Placement Memorandum dated October 2022.

22. The January 2021 PPM represented to investors that the Fund's "goal is to generate outstanding returns on a rolling 24-36 month time horizon through the use of fundamental research across multiple industry sectors in order to generate an edge of insight or factual information."

23. Investors in Hedonova Fund were not expected to take any action to generate profits beyond investing their money.

24. Investors in the Fund reside in various states throughout the United States, including approximately 28 in California and approximately 11 in this district.

I.     **Defendants' Offer and Sale of Securities by Means of False and Misleading Statements.**

   A.     **False and Misleading Statements in the Hedonova Fund PPM**

   25.    Hedonova Fund was formed in April 2021 but solicited investors with a private offering memorandum dated January 2021.

   26.    In the January 2021 PPM, the Fund represents to investors that "The Company will engage primarily in the purchase and sale of long positions in publicly traded securities, other investment funds, U.S. governmental and infrastructure projects, and during certain market environments, may hedge the portfolio using other derivative securities.  Its principal investment objective is the achievement of superior investment returns."  A different section of the January 2021 PPM states that the Fund is "primarily a long investor on U.S. and foreign equity markets," and will invest in "alternative assets like startups, artwork, film and media royalties, equipment leasing, litigation funding, crypto currencies, and emerging market equity investment."

   27.    The January 2021 PPM claimed a Big Four accounting firm as the Fund's auditor ("Big Four Accounting Firm A"), a Chicago-based financial services firm as its administrator ("Financial Services Firm B"), and an international bank as its bank ("International Bank C").

   28.    However, in response to inquiries from the SEC, these entities, after reviewing their records, found no evidence of their ever having had a relationship with Hedonova Fund.  Big Four Accounting Firm A found no record of Hedonova Fund ever being listed as its client.  Financial Services Firm B performed a diligent search of its records and was unable to locate any records regarding Hedonova Fund or Hedonova Advisors.  International Bank C found no record of any entity with Hedonova in its name being a client or customer of International Bank C's American bank.

   29.    The Fund's January 2021 PPM further stated that "Hedonova Advisors

1 LLC, a Delaware company" was the fund's manager, even though Hedonova Advisors was not formed in Delaware until August 2022.

30. The Fund opened a bank account at Regional Bank D on or around October 31, 2021, and accepted its first investment on or around November 5, 2021. Regional Bank D is not mentioned in any of the Fund's promotional materials identified by the SEC. It is not the international bank identified in the January 2021 PPM.

31. Between November 2021 and when Hedonova Advisors was formed in August 2022, the Hedonova Fund account at Regional Bank D received more than 100 deposits totaling approximately $1.6 million in what appear to be investor funds. The deposits were made either directly into the Hedonova Fund account at Regional Bank D or through an online payment processor.

32. During this period, Hedonova transferred approximately $400,000 to digital branding and marketing companies, approximately $119,000 to companies that publish investor newsletters and financial blogs, and approximately $460,000 to an account at Financial Technology Company P. The records also show, among other things, payments of approximately $1,100 to OnlyFans (an adult performance website) and approximately $8,200 in transfers to an entity that appears to operate a resort in Nepal.

33. On information and belief, Cavendish, Kumar, and Bannerjee, together with other persons associated with Hedonova Fund and Hedonova Advisors, knowingly made and disseminated the false and misleading statements described above, or recklessly allowed those false and misleading statements to be disseminated.

**B.     False and Misleading Statements on the Hedonova.io Website and in the Form ADV for Hedonova Advisors.**

34. At all times relevant to this action, Hedonova Fund has maintained a website that is available to the public at the following URL: Hedonova.io.

35. On its website, Hedonova Fund claims to be a "mutual fund, but for alternative assets." The website represents that investors' money will be distributed among alternative asset classes such as litigation finance, startup companies, wine and spirits, real estate, and fine art.

36. Through its website, Hedonova Fund solicited investments of $5,000 or more (later raised to $10,000). The website claims impressive investment returns, including a 38.78% net internal rate of return and a 53.16% compound annual growth rate. The website also represents that as of October 2023, it had achieved "105.27% Alpha over S&P 500."

37. The Fund's website represented prior to Fall 2023 that it used Fine Art Investing Platform E to invest in fine art and Litigation Investing Platform F to make litigation finance investments. Hedonova Fund's website also, at that time, represented that Big Four Accounting Firm A was its auditor.

38. These representations were all false. When Fine Art Investing Platform E and Big Four Accounting Firm A learned of the Fund's claims, in or about January 2023, they sent Hedonova cease-and-desist letters.

39. In the meantime, on or about March 1, 2023, the California Department of Financial Protection and Innovation ("DPFI") questioned Hedonova Fund about its website. Personnel from the Fund responded that it had a relationship with a different entity affiliated with Big Four Accounting Firm A and made its art investments through a different intermediary than Fine Art Investing Platform E. In May 2024, the DPFI issued a desist and refrain order finding, among other things, that at least 146 investors had purchased at least $5,688,390.23 of limited liability company membership interests in Hedonova Fund.

40. In or around Fall 2023, Hedonova Fund revised its website to delete references to Fine Art Investing Platform E and Big Four Accounting Firm A.

41. On September 29, 2023 Hedonova Advisors registered as an Investment Adviser with the SEC by filing a Form ADV. On March 29, 2024, Hedonova

Advisors filed an updated Form ADV.  The Forms ADV for Hedonova Advisors list the Hedonova.io website as one of the website addresses where Hedonova Advisors "control[s] the content."

42. Both the 2023 and 2024 Forms ADV state that certain books and records of Hedonova Advisors are kept at the London office of a Big Four accounting firm ("Big Four Accounting Form O").  However, representatives of Big Four Accounting Firm O have been unable to locate any information showing a relationship with Hedonova Advisors in their internal conflicts database.

43. None of the Fund's known accounts with financial institutions reflect the amount of activity claimed in Hedonova Advisors' 2023 or 2024 Forms ADV.

44. Hedonova Advisors' 2023 Form ADV reported that Hedonova Fund's gross asset value was $704,000,000.

45. On March 29, 2024, Hedonova Advisors filed an updated Form ADV reporting that Hedonova Fund's gross asset value was $823,806,897.

46. On or around March 25, 2024, Hedonova Fund produced to the SEC an undated document purporting to be a portfolio allocation schedule. The schedule reported holdings with market values totaling only $79,304,244.

47. During the SEC's investigation, Defendants provided the SEC with what purported to be a list of investors in the Fund.  The list included only approximately 85 investors.  The purported aggregate investment amount for the 85 investors was only $1,710,778.

48. The records of the Fund's known financial accounts reflect no transfers to Fine Art Investing Platform E or to Litigation Investing Platform F.  Nor do the records of the Fund's accounts reflect payments for services rendered by Big Four Accounting Firm A or Big Four Accounting Firm O.

49. The identity of the people who control Hedonova Fund and Hedonova Advisors is unclear.  The LinkedIn profiles for Bannerjee and for a person identified as Hedonova Fund's Chief Technology Officer as of October 2022 appear to use

1 | stock photographs. The photo for Bannerjee appears on a stock photography website, and the photo for the Chief Technology Officer appears under a different name on a blog post by an employee at a major consulting firm.

50. As of November 1, 2023, Hedonova Fund's website claimed relationships with several reputable accounting firms and banks. The website listed Accounting Firm G as the Fund's auditor and explained that "Auditors ensure we follow the best accounting practices, standards, and protocols. They also review our valuation methods and how they are implemented."

51. As of the same date, Hedonova Fund's website listed two international banks, International Bank C and International Bank H, as "Bankers" and the Chicago-based Financial Services Firm B as "Custodian," including images of the logos of both international banks and the Chicago-based financial services firm. The website stated that "Hedonova is in charge of all investment decisions. However the fund's assets are held by custodians who act in the best interest of the investors."

52. The 2023 and 2024 Hedonova Advisors Forms ADV made similar claims. The Forms ADV list a purported affiliate of Chicago-based Financial Services Firm B located in Dublin, Ireland, as the custodian of funds.

53. The 2023 and 2024 Hedonova Advisors Forms ADV further identified a specific affiliate of Big Four Accounting Firm A, Accounting Firm J, as Hedonova Fund's auditor and provided a London address for the Accounting Firm J.

54. These representations are all false. Each of the several professional services firms named in paragraphs 50 through 53 above has informed the SEC that it has no record of Hedonova Fund or Hedonova Advisors ever having been a client.

55. Chicago-based Financial Services Firm B also informed the SEC staff that the purported affiliate of Financial Services Firm B supposedly located in Dublin, Ireland does not exist.

56. International Bank C and International Bank H, identified on Hedonova Fund's website, maintain controls around the use of their corporate names and logos.

Both international banks searched their brand control records and determined that Hedonova Fund's use of the banks' names and logos is unauthorized.

57. Sometime between February 8, 2024 and March 1, 2024, Hedonova Fund removed the reference to Chicago-based Financial Services Firm B as "Custodian" from its website and added a reference to Global Hedge Fund Administrator K as Hedonova Fund's "Administrator," including a copy of Global Hedge Fund Administrator K's logo.

58. But this new representation is false too. Global Hedge Fund Administrator K does not currently provide, and has not in the past provided, services to Hedonova Fund. Nor did it authorize Hedonova Fund to use its name and logo on the Hedonova.io website.

59. Investors considered Hedonova Fund's representations about the Fund's investment portfolio and performance before making investment decisions. They believed that Hedonova Fund's portfolio of alternative asset investments offered them exposure to asset classes that were not readily available to them in other funds. Investors' decisions to invest were influenced by the disclosures on Hedonova Fund's website about the Fund's rate of return compared to that of the S&P 500.

60. To convince investors their investments in Hedonova Fund were profitable and safe, Hedonova Advisors sends investors monthly "quantitative reports" touting Hedonova Fund's purported strong performance. Hedonova Advisors sent at least one investor a quantitative report as recently as May 1, 2024, purporting to address the performance of Hedonova Fund in April 2024.

61. On information and belief, Cavendish, Kumar, and Bannerjee, together with other persons associated with Hedonova Fund and Hedonova Advisors knowingly made and disseminated the false and misleading statements described above or recklessly allowed those false and misleading statements to be disseminated.

**C.   Defendants Received Approximately $12.5 Million**

62. From on or about November 2021 through at least October 2023,

1  accounts in the name of Hedonova Fund received approximately $12.5 million in
2  deposits.
3    63.    Of the $12.5 million, approximately $1.6 million was deposited into the
4  Hedonova Fund account at Regional Bank D prior to the time that Hedonova
5  Advisors was formed.
6    64.    From approximately April 2022 to October 2023, investors sent funds to
7  Hedonova Fund through an account held at Payment Processor L.
8    65.    In addition to Regional Bank D and Payment Processor L, at various
9  times Hedonova Fund also used bank ACH transfers, credit card payments, a money
10 transfer service, Money Transfer Service M, and another regional bank, Regional
11 Bank N, to receive investor funds.
12   66.    A client list produced by Hedonova contained the names of
13 approximately 85 investors with a purported aggregate investment amount totaling
14 $1,710,778.  Hedonova Fund's financial records revealed that Hedonova received
15 $1,265,114 from investors on its client list and sent $1,314,250 to this group of
16 investors.
17   67.    The SEC has identified additional deposits of $2,536,669 into Hedonova
18 Fund accounts bearing notations that they were investments in Hedonova Fund.  Of
19 these deposits, $633,566 came from parties who were not included on the investor list
20 described in paragraph 66 above.
21   68.    The SEC has not identified payments to or from Fine Art Investing
22 Platform E, Litigation Investing Platform F, Accounting Firm J, Big Four Accounting
23 Firm O, Financial Services Firm B, International Bank H, Global Hedge Fund
24 Administrator K, or Accounting Firm G in the bank and other financial institution
25 records for Hedonova Fund or Hedonova Advisors.

**II.    Defendants Failed to Produce Evidence Corroborating
        Their Representations**

28   69.    The SEC issued a subpoena for documents to Hedonova Fund on

September 28, 2023 seeking to substantiate the Fund's purported investment activity and the relationships it claimed to have with the several financial institutions and professional firms discussed above.

70. Hedonova Fund's production in response to the September 28, 2023 subpoena was incomplete. The Fund has not produced copies of its audited or unaudited financial statements for any period covered by the SEC's subpoena. The Fund did identify accounts at four banks (one of which is affiliated with Money Transfer Service M and one of which is affiliated with Regional Bank N), but the Fund failed to provide any documentation substantiating relationships with International Bank C, International Bank H, or Chicago-based Financial Services Firm B. Nor did the Fund produce engagement letters, service contracts, or other documentation establishing current or former relationships with Accounting Firm G or the U.S. affiliate of Big Four Accounting Firm A. As discussed above, the SEC has been informed by the financial institutions and accounting firms that they have not located any evidence showing a relationship with Hedonova Fund.

71. The Fund also failed to produce documents proving its current holdings in the various alternative asset classes identified on its website. Instead, Hedonova Fund produced a few documents including reports concerning the provenance and condition of several fine art paintings, miscellaneous documents from the Governments of India and Nepal, and pictures of what appear to be real estate parcels in Nepal. However, Hedonova Fund produced no documentation proving that it owned these assets, or any other assets beyond accounts at the four financial institutions discussed above.

72. The SEC issued another subpoena to Hedonova Fund on April 4, 2024 requiring the production of additional documents, including documents relating to social media posts concerning Hedonova Fund's purported investments and portfolio transactions, and awards received by Hedonova Fund or Hedonova Advisors. Hedonova Fund has not produced any documents responsive to the April 4, 2024

1 subpoena.

2     73.    The SEC issued a subpoena to Hedonova Advisors on May 2, 2024 requesting the production of certain documents that registered investment advisers are required by law to keep in an easily accessible place, including journals, ledgers, records of purchases and sales of securities, checkbooks, bank statements, audited financial statements, and client agreements. Hedonova Advisors has not produced any documents to the SEC in response to the May 2, 2024 subpoena.

    74.    When the SEC subpoenaed Cavendish, Kumar, and Bannerjee for investigative testimony, they declined to appear in the United States. Instead, they proposed to testify remotely. Bannerjee and Cavendish proposed testifying from jurisdictions where such testimony would be prohibited by local law. Kumar proposed to testify from a location where compelled testimony is not permitted, and voluntary testimony requires obtaining prior permission of the foreign government. Accordingly, the SEC has not taken the testimony of Bannerjee, Kumar, or Cavendish.

## FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(Against Defendants Hedonova Fund and Hedonova Advisors)**

    75.    The SEC realleges and incorporates by reference paragraphs 1 through 74 above.

    76.    As alleged above, Defendants Hedonova Fund and Hedonova Advisors sold securities, in the form of investments in Defendant Hedonova Fund, by means of materially false and misleading statements about the business of Defendant Hedonova Fund and the potential risks and rewards of investing in Defendant Hedonova Fund.

    77.    By engaging in the conduct described above, Defendants Hedonova Fund and Hedonova Advisors, and each of them, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of

interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

78. Defendants Hedonova Fund and Hedonova Advisors, and each of them, acted knowingly and/or recklessly.

79. By engaging in the conduct described above, Defendants Hedonova Fund and Hedonova Advisors violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a) of the Securities Act**

**(Against Defendants Hedonova Fund and Hedonova Advisors)**

80. The SEC realleges and incorporates by reference paragraphs 1 through 74 above.

81. As alleged above, Defendants Hedonova Fund and Hedonova Advisors offered and sold securities, in the form of investments in Defendants Hedonova Fund, by means of materially false and misleading statements about the business of Defendant Hedonova Fund and the potential risks and rewards of investing in Defendant Hedonova Fund.

82. By engaging in the conduct described above, Defendants Hedonova Fund and Hedonova Advisors, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud; obtained money and property by means of untrue statements of

material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

83. Defendants Hedonova Fund and Hedonova Advisors acted knowingly, recklessly, and/or negligently, in engaging in the conduct described above.

84. By engaging in the conduct described above, Defendants Hedonova Fund and Hedonova Advisors violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8

### (Against Defendant Hedonova Advisors)

85. The SEC realleges and incorporates by reference paragraphs 1 through 74 above.

86. As alleged above, Defendant Hedonova Advisors is an investment adviser to a pooled investment vehicle, Defendant Hedonova Fund. Defendant Hedonova Advisors therefore owed a fiduciary duty to Defendant Hedonova Fund. Defendant Hedonova Advisors breached its fiduciary duty by recommending the sale of securities, in the form of investments in Defendant Hedonova Fund, by means of materially false and misleading statements about the business of Defendant Hedonova Fund and the potential risks and rewards of investing in Defendant Hedonova Fund.

87. By engaging in the conduct described above, Defendant Hedonova Advisors, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, while serving as an investment adviser to a pooled investment vehicle: (a) made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading to investors and prospective investors in the pooled vehicles; and (b) engaged in fraudulent, deceptive, and

manipulative conduct with respect to investors and prospective investors in a pooled vehicle.

88.  By engaging in the conduct described above, Defendant Hedonova Advisors has violated, and unless restrained and enjoined, is reasonably likely to continue to violate, Sections 206(4) [15 U.S.C. §§ 80b-6(4)] of the Advisers Act and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Hedonova Fund, and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Hedonova Advisors, and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17

C.F.R. § 275.206(4)-8].

## IV.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants Hedonova Fund and Hedonova Advisors, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from (1) participating in the issuance, purchase, offer, or sale of securities; (2) requiring Hedonova Fund to remove all pages of its website from all hosting services it uses or has used and in its place post a copy of the Commission's complaint; and (3) requiring Hedonova Advisors to submit a new form ADV to the Commission within 24 hours correcting any false or misleading statements.

## V.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon under Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

## VI.

Order Defendant Hedonova Advisors to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff SEC demands a trial by jury on all claims so triable.

Dated: June 24, 2024

*/s/ Alec Johnson*
Alec Johnson
Attorney for Plaintiff
Securities and Exchange Commission