BELINDA I. MATHIE (IL Bar No. 6275461)
*PRO HAC VICE* APPLICATION PENDING
Email:  MathieB@sec.gov
JOHN E. BIRKENHEIER (IL Bar No. 6270993)
*PRO HAC VICE* APPLICATION PENDING
Email: BirkenheierJ@sec.gov
LEE FARNSWORTH (IL Bar No. 6332666)
*PRO HAC VICE* APPLICATION PENDING
Email: FarnsworthL@sec.gov
175 West Jackson Blvd, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Attorneys for Plaintiff
United States Securities and Exchange Commission

LOCAL COUNSEL
Alec Johnson (Cal. Bar No. 270960)
Email: JohnsonStu@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>HEDONOVA LLC and HEDONOVA ADVISORS LLC<br><br>Defendants. | Case No. 2:24-cv-05293-AB-E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISION'S *EX PARTE* MOTION FOR EXPEDITED RELIEF** |

MEMORANDUM OF POINTS AND
AUTHORITIES

TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     NOTICE TO DEFENDANTS ..............................................................................1

III.    STATEMENT OF FACTS ....................................................................................1

        A.      Defendants Hedonova and Advisors ...................................................1

        B.      Defendants Sold Securities in the Form of Investment Contracts ............3

        C.      False and Misleading Statements in the Hedonova PPM ........................3

        D.      False and Misleading Statements on Hedonova's Website and in
                Advisors' Form ADV .........................................................................5

        E.      Defendants Received Approximately $12,562,000 ...............................8

        F.      Defendants Emphasized Hedonova's Purported Performance .................9

        G.      Defendants Failed to Produce Evidence Corroborating Their
                Representations .................................................................................9

IV.     ARGUMENT ......................................................................................................11

        A.      The SEC Seeks Ancillary Relief in the Public Interest ..........................11

        B.      The SEC Has Made a Prima Facie Showing that Defendants Have
                Engaged in a Scheme to Defraud .......................................................13

                1.      Investments in Hedonova Are Securities ...................................13

                2.      Defendants Committed Fraud ....................................................15

                        Violations by Hedonova and Advisors ..........................................15

                        Violations by Advisors ..............................................................17

                3.      Defendants Acted With Scienter and Unreasonably ....................17

        C.      Defendants' Violations Are Likely to be Repeated ...............................18

        D.      The Relief Sough by the SEC Is Needed ..............................................19

                        Accounting ..............................................................................20

                        Document Preservation Order......................................................21

                        Expedited Discovery .................................................................21

IV.     CONCLUSION...................................................................................................22

MEMORANDUM OF POINTS AND
AUTHORITIES                                     i

**TABLE OF AUTHORITIES**

**Federal Cases**                                                             **Page(s)**

*Aaron v. SEC,*

    446 U.S. 680 & 697 (1980) ........................................................................... 18

*FSLIC v. Sahni,*

    868 F.2d 1096 (9th Cir. 1989) .................................................................... 12

*FTC v. H.N. Singer, Inc.,*

    668 F.2d 1107 (9th Cir. 1982) .................................................................... 12

*Hollinger v. Titan Capital Corp.,*

    914 F.2d 1564 (9th Cir. 1990) .................................................................... 18

*Janus Capital Group, Inc. v. First Derivative Traders,*

    564 U.S. 135 (2011) ................................................................................... 16

*Middlesex Retirement Sys. v. Quest Software Inc.,*

    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ..................................................... 15

*SEC v. Capital Cove Bancorp, LLC,*

    No. 8:15-cv-00980-JLS-JC, 2015 WL 9704076 (C.D. Cal. Sept. 1, 2015) .......... 13

*SEC v. Cavanagh,*

    155 F.3d 129 (2d Cir. 1998) ...................................................................... 12

*SEC v. Dropil, Inc.,*

    2020 WL 7348021 (C.D. Cal. Oct. 23, 2020) .......................................... 12

*SEC v. Edwards,*

    540 U.S. 389 (2004) ................................................................................... 14

*SEC v. Fehn,*

    97 F.3d 1276 (9th Cir. 1996) ..................................................................... 18

*SEC v. Horowitz.,*

    No. 21-cv-02927-CAS-PD (C.D. Cal. Apr. 6, 2021) ................................. 20, 21

MEMORANDUM OF POINTS AND AUTHORITIES

ii

*SEC v. Int'l Swiss Invs. Corp.*,

895 F.2d 1272 (9th Cir. 1990) .................................................................... 20

*SEC v. King.*,

No. 20-cv-02398-JVS-DFM (C.D. Cal. Dec. 28, 2020) ................................ 20, 21

*SEC v. Lyndon*,

27 F. Supp. 3d 1062 (D. Haw. June 13, 2014) ....................................... 17

*SEC v. Manor Nursing Centers, Inc.*,

458 F.2d 1082 (2d Cir. 1972) ................................................................. 11

*SEC v. Mattera*,

No. 11 Civ. 8323(PKC), 2012 WL 4450999 (S.D.N.Y. Sept. 26, 2012) ........ 20, 21

*SEC v. Mgmt. Dynamics, Inc.*,

515 F.2d 801 (2d Cir. 1975) .................................................................. 11

*SEC v. Muehler*,

No. 2:18-cv-01677-CAS-SK, WL 2018 1665637 (C.D. Cal. Apr. 4, 2018) ........ 13

*SEC v. Murphy*,

626 F.2d 633 (9th Cir. 1980) ............................................................ 18, 19

*SEC v. Platforms Wireless Int'l Corp.*,

617 F.3d 1072 (9th Cir. 2010) ............................................................. 15

*SEC v. R.G. Reynolds Ent., Inc.*,

952 F.2d 1125 (9th Cir. 1991) ............................................................. 14

*SEC v. Rabinovich & Assocs., LP*,

2008 U.S. Dist. LEXIS 93595at *7 & *11 (S.D.N.Y. 2008) ............................ 17

*SEC v. Rana Research, Inc.*

8 F.3d 1358 ................................................................................... 12

*SEC v. San Francisco Regional Center, LLC*,

No. CV 15-2563-RS, 2015 WL 9694808 (N.D. Cal. Mar. 23, 2017) .................. 13

*SEC v. Schooler*,

902 F. Supp. 2d 1341 (S.D. Cal. 2012) ............................................... 12

*SEC v. Skinner,*

    No. 21-cv-05273-SB-KS, 2022 WL 2784811 ...................................................... 19

*SEC v. Steadman,*

    967 F.2d 636 (D.C. Cir. 1992) ...................................................................... 18

*SEC v. United Financial Group, Inc.,*

    474 F.2d 354 (9th Cir. 1973) ....................................................................... 18

*SEC v. W.J. Howey Co.,*

    328 U.S. 293 (1946) ............................................................................ 13, 14

*SEC v. Wang,*

    No. LA CV 13-07553 JAK (SSx), 2015 WL 12656906 .................................... 16

*SEC v. Wencke,*

    622 F.2d 1363 (9th Cir. 1980)........................................................................ 21

*SEC v. Zera Fin. LLC,*

    2023 WL 8269775 (C.D. Cal. Oct. 30, 2023) ...................................................... 14

*Simpson v. AOL Time Warner, Inc.,*

    452 F.3d 1040 (9th Cir. 2006) ..................................................................... 15

*Steadman v. SEC*

    603 F.2d 1126 (5th Cir. 1979) ..................................................................... 18

*United States v. Nutri-Cology, Inc.,*

    982 F.2d 394 (9th Cir. 1992) ....................................................................... 12

*United States v. Odessa Union Warehouse Co-Op,*

    833 F.2d 172 (9th Cir. 1987) ....................................................................... 18

*United States v. Shields,*

    No. CR12-00410, 2014 WL 4744617 (N.D. Cal. Sept. 23, 2014) ....................... 16

*Vernazza v. SEC,*

    327 F.3d 851 (9th Cir. 2003) ................................................................ 17, 18

MEMORANDUM OF POINTS AND AUTHORITIES

iv

**Federal Statutes**

15 U.S.C. § 77b

  Section 2(a)(1) of the Securities Act of 1933.................................................... 13, 14

15 U.S.C. § 77q(a)(1)

  Section 17(a)(1) of the Securities Act of 1933 ........................................ 15, 16, 17

15 U.S.C. § 77q(a)(2)

   Section 17(a)(2) of the Securities Act of 1933 ........................................ 15, 16, 18

15 U.S.C. § 77q(a)(3)

Section 17(a)(3) of the Securities Act of 1933 .............................................. 15, 16, 18

15 U.S.C. § 77v(a)

  Section 22(a) of the Securities Act of 1933 ........................................................ 11

15 U.S.C. § 78c(a)(10)

   Section 3(a)(10) of the Securities Exchange Act of 1934 ............................ 13, 14

15 U.S.C. § 78j(b)

  Section 10(b) of the Securities Exchange Act of 1934........................ 12, 15, 16, 17

15 U.S.C. § 78aa

   Section 27 of the Securities Exchange Act of 1934 ............................................ 11

15 U.S.C. § 80a-3(a)

  Section 3(a) of the Investment Company Act of 1940 ........................................ 17

15 U.S.C. §§ 80a-3(c)(1)

  Section 3(c)(1) of the Investment Company Act of 1940 ................................... 17

15 U.S.C. §§ 80a-3(c)(7)

  Section 3(c)(7) of the Investment Company Act of 1940 ................................... 17

15 U.S.C. § 80b-2(a)(18)

  Section 202(a)(18) of the Advisers Act of 1940............................................. 13, 14

15 U.S.C. § 80b-6(4)

  Section 206(4) of the Advisers Act of 1940 ................................................. 17, 18

MEMORANDUM OF POINTS AND
AUTHORITIES

v

**Federal Rules**

17 C.F.R. §§ 240.10b-5

    Rule 10b-5 of the Securities Exchange Act of 1934 ............................. 12, 15, 16

17 C.F.R. §§ 240.10b-5(a)

    Rule 10b-5(a) of the Securities Exchange Act of 1934................................. 15, 16

17 C.F.R. §§ 240.10b-5(c)

    Rule 10b-5(c) of the Securities Exchange Act of 1934................................. 15, 16

17 C.F.R. § 275.204-2(a)

    Rule 204-2(a) of the Advisers Act of 1940 .......................................................... 11

17 C.F.R. § 275.204-2(c)(1)(i)

    Rule 204-2(c)(1)(i) of the Advisers Act of 1940..................................................... 11

17 C.F.R. § 275.204-2(e)(1)

    Rule 204-2(e)(1) of the Advisers Act of 1940........................................................ 11

17 C.F.R. § 275.206(4)-8

    Rule 206(4)-8 of the Advisers Act of 1940 ........................................................... 18

17 C.F.R. § 275.206(4)-8(a)(1)

    Rule 206(4)-8(a)(1) of the Advisers Act of 1940.................................................... 17

17 C.F.R. § 275.206(4)-8(a)(2)

    Rule 206(4)-8(a)(2) of the Advisers Act of 1940.................................................... 17

17 C.F.R. § 275.206(4)-8(b)

    Rule 206(4)-8(b) of the Advisers Act of 1940 ...................................................... 17

Federal Rules of Civil Procedure 26(d) ........................................................... 21

Federal Rules of Civil Procedure 30(a) ........................................................... 21

Federal Rules of Civil Procedure 33(b) ........................................................... 21

Federal Rules of Civil Procedure 34(b) ........................................................... 21

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff United States Securities and Exchange Commission ("SEC") filed a complaint against Defendants Hedonova LLC ("Hedonova") and Hedonova Advisors LLC ("Advisors") alleging that Defendants have violated and may be continuing to violate several antifraud provisions of the federal securities laws.  (Dkt. 1.)  The SEC seeks expedited relief in the form of an order: (1) requiring Defendants to produce sworn accountings; (2) allowing expedited discovery; and (3) prohibiting Hedonova and Advisors from destroying documents.

The SEC is not seeking an asset freeze or preliminary injunction at this time because of Defendants' obstruction (described below), but will seek additional relief if warranted.  In support of its *ex parte* motion, the SEC submits supporting declarations, exhibits, and other filings.

## II.    NOTICE TO DEFENDANTS

On June 17, 2024, pursuant to Local Rule 7-19.1, the SEC notified counsel to Hedonova (by voicemail and email) and the General Counsel of Advisors (by telephone message and email) of its intention to file the Complaint and this motion seeking expedited relief.  (Declaration of Charles J. Kerstetter ("Kerstetter Decl.") ¶ 5.)  Hedonova's counsel is John Sellers of Oberheiden P.C., 4709 Harford Road, Baltimore, MD 21214, (888) 680-1745, John@federal-lawyer.com.  Genevievette Walker-Lightfoot is General Counsel of Advisors, Law Offices of Genevievette Walker-Lightfoot, P.C., 5457 Twin Knolls Road, Suite 300, Columbia, MD 21045, 240-443-4436, [genevievette@hedonova.io](mailto:genevievette@hedonova.io).  (*Id.*)  Counsel to Hedonova confirmed receipt of the SEC's notice via email on June 17, 2024.  (*Id.* ¶ 6.)  Counsel have not responded further.

## III.    STATEMENT OF FACTS

### A.    Defendants Hedonova and Advisors.

Hedonova is an investment fund formed in April 2021 under the laws of Delaware.  (Kerstetter Decl. ¶ 7, Ex. 1 at 13.)  It describes itself as "a mutual fund,

MEMORANDUM OF POINTS AND
AUTHORITIES

1

but for alternative assets." (*Id.* ¶ 19, Ex. 13 at 109.)  In September 2023, it was domesticated in Idaho. (*Id.* ¶ 35, Ex. 29 at 155.)  Hedonova has listed its principal place of business as Dover, Delaware and Meridian, Idaho. (*Id.* ¶ 7, Ex. 1 at 13; ¶ 35, Ex. 29 at 155.)  In May 2024, Hedonova was the subject of a California state administrative desist and refrain order in connection with its securities investment business. *See In the Matter of Hedonova LLC, et al.*, Desist & Refrain Order, Cal. Bus., Consumer Servs. & Housing Agency, Dep't of Fin. Protection & Innovation, May 2, 2024 ("California Order").  The California Order found, among other things, that Hedonova made untrue statements of material fact in connection with the offer and sale of its securities. (California Order ¶ 8.)

Advisors is an SEC-registered investment adviser to Hedonova.   (Declaration of Timothy T. Tatman ("Tatman Decl.") ¶ 8, Ex. 1.)   Advisors was formed in August 2022 under the laws of Delaware. (*Id*. Ex. 1 at 15.)  It registered with the SEC by filing a Form ADV on September 29, 2023, identifying a Los Angeles address as its principal office and place of business. (*Id.* Ex. 1 at 10.)  On March 29, 2024, Advisors filed an updated Form ADV listing an address in Post Falls, Idaho as its principal office and place of business. (*Id.* ¶ 9, Ex. 2 at 37.)  Per both Forms ADV, the business of Advisors is to provide "portfolio management services for pooled investment vehicles." (*Id.* Ex. 1 at 17; Ex. 2 at 44.)  According to the Hedonova Private Offering Memorandum dated January 2021 ("January 2021 PPM"), Advisors "has direct and primary responsibility for all investment decisions of" Hedonova and Advisors receives fees in exchange.[1] (Kerstetter Decl. Ex. 1 at 20.)

Advisors' Form ADV lists Alexander Cavendish ("Cavendish"), Munish Kumar ("Kumar"), and Suman Bannerjee ("Bannerjee") as the principals of Hedonova, and as control persons of, and persons with an ownership interest in,

---

[1] Hedonova also posted a Private Placement Memorandum dated October 2022 on its website. (Kerstetter Decl. Ex. 2.)  The October 2022 PPM is nearly identical in content to the January 2021 PPM. (*Id.* Ex. 1, Ex. 2.)

MEMORANDUM OF POINTS AND AUTHORITIES

2

Advisors.  (Tatman Decl. Ex. 1 at 23, 33.)  Hedonova represents that these individuals, who declined to appear for testimony in the United States during the SEC's investigation, are located outside of the United States.  (Kerstetter Decl. ¶ 37.)

## B.    Defendants Sold Investment Contracts.

Between at least November 2021 and February 2024, Advisors and Hedonova offered and sold securities in the form of limited liability company membership interests in Hedonova, through general solicitation on their public website.

Hedonova's website initially solicited investments of at least $5,000. (Kerstetter Decl. ¶ 13, Ex. 7; ¶ 22, Ex. 16.)  Hedonova informed investors that their money would "purchase parts of the fund, called 'blocks'" and that the investors would "make a profit when the overall value of [Hedonova] increases."  (*Id.* ¶ 34, Ex. 28.)  Individuals invested in response to Hedonova's solicitations.  (Tatman Decl. ¶¶ 26-27.)  Investor money was pooled in accounts held at FinTech entities; some of it was subsequently transferred into accounts at various regional and online banks. (*Id.* ¶ 11, 18.)

Hedonova offered membership interests to investors via the January 2021 PPM, which represented that Hedonova's "goal is to generate outstanding returns on a rolling 24-36 month time horizon."  (Kerstetter Decl. Ex. 1 at 13, 26.)  Investors in Hedonova did not choose specific investments; rather, Hedonova's portfolio managers oversaw fund allocation.  (Kerstetter Decl. ¶ 36, Ex. 30.)  The SEC has identified Hedonova investors residing throughout the United States, including approximately 28 in California and approximately 11 in this district.  (Tatman Decl. ¶ 21.)

## C.    False and Misleading Statements in Hedonova's PPM.

The January 2021 PPM represents to investors that Hedonova's "principal investment objective is the achievement of superior investment returns."  (Kerstetter Decl. Ex. 1 at 20.)  It also states that Hedonova is "primarily a long investor on U.S. and foreign equity markets," and will invest in "alternative assets like startups,

MEMORANDUM OF POINTS AND AUTHORITIES

3

artwork, film and media royalties, equipment leasing, litigation funding, crypto currencies, and emerging market equity investment." (*Id.* at 13.)  The January 2021 PPM stated that "Hedonova Advisors LLC, a Delaware company" was Hedonova's manager, even though Advisors was not formed in Delaware until nineteen months later, in August 2022. (*Id.*)  The January 2021 PPM also claimed Deloitte LLP as Hedonova's auditor, Northern Trust as its administrator, and HSBC as its bank.  (*Id.* at 19.)  However, in response to inquiries from the SEC, these entities found no evidence of relationships with Hedonova or Advisors.  Deloitte LLP found no record of Hedonova ever being listed as its client. (Kerstetter Decl. ¶ 9, Ex. 3 ¶¶ 5, 8.)  Northern Trust performed a diligent search of its records and was unable to locate any records regarding Hedonova or Advisors.  (Kerstetter Decl. ¶ 10, Ex. 4 ¶ 3.)  HSBC found no record of any entity with Hedonova in its name being a client or customer.[2]  (Kerstetter Decl. ¶ 12, Ex. 6 ¶¶ 8-9.)

Hedonova opened a bank account at Blue Ridge Bank ("Blue Ridge") on or around October 31, 2021, and accepted its first investment on or around November 5, 2021.  (Tatman Decl. ¶ 11.)  Blue Ridge is not mentioned in any of Hedonova's promotional materials identified by the SEC.  Between November 2021 and when Advisors was formed in August 2022, the Hedonova account at Blue Ridge received more than 100 deposits totaling approximately $1.6 million in what appear to be investor funds.  (*Id*. ¶ 18.)  The deposits were made either directly into the Hedonova account at Blue Ridge or via an online payment processor.  (*Id.*)  During this period, Hedonova transferred approximately $400,000 to digital branding and marketing companies, approximately $119,000 to companies that publish investor newsletters and financial blogs, and approximately $460,000 to an account at Novel Financial Inc. (*Id.*)  The records additionally show payments of approximately $1,100 to

---

[2] The SEC's investigation has identified one transaction where190 Euros was sent to an account at a foreign HSBC entity. (Tatman Decl. ¶ 20.)

MEMORANDUM OF POINTS AND AUTHORITIES

4

OnlyFans (an adult performance website) and approximately $8,200 in transfers to an entity that appears to operate a resort in Nepal.  (*Id.*)

> **D.    False and Misleading Statements on Hedonova's Website and in Advisors' Form ADV.**

At all times relevant to this action, Hedonova has maintained the Hedonova.io website, which is available to the public.  (Kerstetter Decl. ¶ 13-18, Exs. 7-12.)  The website states that Hedonova prepared the information on the site and that copyrights and trademarks used on the site belong to Hedonova.  (*Id.* Exs. 10, 12.)  However, the Forms ADV for Advisors list Hedonova's website as a website for which Advisors "control[s] the content." (Tatman Decl. Ex. 1 at 12; Ex. 2 at 39.)  On its website, Hedonova claims to be a "mutual fund, but for alternative assets." (*Kerstetter Decl.* Exs. 7, 10, 13, 16 at 121.)  The website represents that investors' money will be distributed among alternative asset classes such as Litigation Finance, Startups, Real Estate, and Art.  (*Id*. Exs. 10, 14.)

Through its website, Hedonova solicits investments of $10,000 or more.  (*Id*. Ex. 2 at 1, 6, 11.)  The website claims higher investment returns than the S&P 500, including a "38.78% Net Internal Rate of Return" and a "53.16% compound annual growth rate." (*Id*. Exs. 10, 15.)  As recently as late 2022, the website represented that it used Masterworks to invest in fine art and LexShares to make litigation finance investments. (*Id*. Exs. 7, 16 at 121, 123.)  Hedonova's website also, at that time, represented that "Deloitte US" was its auditor.  (*Id*. Exs. 7, 17.)

These representations were all false.  When Masterworks and Deloitte learned of Hedonova's claims, they each sent Hedonova cease-and-desist letters.  (Kerstetter Decl. Exs. 19, 20.)

In the meantime, in or around March 2023, the California Department of Financial Protection and Innovation ("DFPI") questioned Hedonova about its representations concerning Deloitte LLP.  (Kerstetter Decl. Ex. 21 ¶ 3.)  Hedonova's counsel said she would provide the DFPI with copies of audited financial statements

MEMORANDUM OF POINTS AND AUTHORITIES

as soon as they were available.  (*Id.* ¶ 4.)  However, as of April 16, 2024, DFPI had not received these or other documents such as an engagement letter or audit report.  (*Id.* ¶ 5.)  In May 2024, the DPFI issued an order finding, among other things, that at least 146 investors had purchased at least $5,688,390.23 of limited liability company membership interests in Hedonova.  (California Order ¶ 7.)

In or around Fall 2023, Hedonova revised its website to delete references to Masterworks and Deloitte US.  (Kerstetter Decl. Ex. 22.)

The September 29, 2023 and March 29, 2024 Forms ADV state that certain books and records of Advisors are kept at the London office of Ernst & Young Global Limited ("E&Y").  (Tatman Decl. Ex. 1 at 12; Ex. 2 at 39.)  However, representatives of E&Y have been unable to locate any information showing a relationship with Advisors in their internal conflicts database.  (Kerstetter Decl. ¶ 29, Ex. 23 at 143-44.)

None of Hedonova's known accounts with financial institutions reflect the amount of activity claimed in Advisors' Forms ADV.  Advisors' 2023 Form ADV reported that Hedonova's gross asset value was $704,000,000, and the 2024 Form ADV reported that Hedonova's gross asset value was $823,806,897.  (Tatman Decl. ¶¶ 8-9; Ex. 1 at 25; Ex 2 at 44.)  However, on or around March 25, 2024, Hedonova produced an undated portfolio allocation schedule to the SEC that reported holdings with market values totaling only $79,304,244.  (*Id.* ¶ 9; Exs. 3, 4.) Defendants also provided the SEC with a purported list of Hedonova's investors.  The list included only approximately 85 investors, with a purported aggregate investment amount of only $1,710,778.  (*Id.* ¶ 10; Exs. 5, 6)  Furthermore, the records of Hedonova's known financial accounts reflect no transfers to Masterworks, LexShares, or Deloitte LLP.  (*Id.* ¶ 19.)

In addition, the identity of the people who control Hedonova and Advisors is unclear.  The LinkedIn profiles for Bannerjee and the person identified as Hedonova's Chief Technology Officer as of October 2022 appeared to use stock

MEMORANDUM OF POINTS AND AUTHORITIES

6

photographs. (*Id.* ¶ 22.) The photo for Bannerjee appears on a stock photography website, and the photo for the Chief Technology Officer appears under a different name on a blog post by an employee at a major consulting firm. (Tatman Decl. ¶¶ 23-24.)

As of November 1, 2023, Hedonova's website claimed relationships with several reputable accounting firms and banks. (Kerstetter Decl. ¶ 30, Ex. 24.) The website listed Haynie & Company as Hedonova's auditor and explained that auditors "ensure we follow the best accounting practices" and "review our valuation methods and how they are implemented." (*Id*. at 148) As of the same date, Hedonova's website listed HSBC and Citi as "Bankers" and Northern Trust as "Custodian," including images of the logos of all three entities. (*Id*. at 149) The website stated: "Hedonova is in charge of all investment decisions. However, the fund's assets are held by custodians who act in the best interest of the investors." (*Id*.)

The 2023 and 2024 Advisors Forms ADV made similar claims. They list "Northern Trust Global Custody Services AG" located in Dublin, Ireland, as the custodian of funds. (Tatman Decl. Exs. 1 at 27-28, 2 at 54-55.) They further identified Deloitte Touche Tohmatsu Limited in London as Hedonova's auditor. (*Id.* Exs. 1 at 26, 2 at 53.)

These representations are all false. Northern Trust and Deloitte LLC each informed the SEC that it has no record of Hedonova or Advisors ever having been a client. (Kerstetter Decl. Ex. 10, ¶ 3; Ex. 3, ¶¶ 5, 8, 11.) Moreover, Northern Trust informed the SEC staff that the purported affiliate of Northern Trust supposedly located in Dublin, Ireland does not exist. (Kerstetter Decl. ¶ 11, Ex. 5 ¶ 3.) Furthermore, both HSBC and Citi maintain controls around the use of their corporate names and logos. Both searched their records and determined that Hedonova's use of their names and logos on its website is unauthorized. (Kerstetter Decl. Ex. 6, ¶¶ 8-9; Ex. 25, ¶9.)

Sometime between February 8, 2024 and March 1, 2024, Hedonova removed

MEMORANDUM OF POINTS AND AUTHORITIES

7

the reference to Northern Trust as "Custodian" from its website and added a reference to Citco as Hedonova's "Administrator," including a copy of Citco's logo. (Kerstetter Decl. ¶ 32, Ex. 26 at 157.)  Citco does not, and has not, provided services to Hedonova.  (*Id.* ¶ 33, Ex. 27, ¶¶ 3-4.)  Nor did it authorize Hedonova to use its name and logo on its website.  (*Id.* ¶ 5.)

### E.    Defendants Received Approximately $12,562,000.

From about November 2021 through at least October 2023, Hedonova received approximately $12,562,000 from third parties, including at least $3,802,000  from confirmed or potential investors.  (Tatman Decl. ¶ 12.)  Of the $12.5 million, approximately $1.6 million was deposited into the Hedonova account at a regional bank, Blue Ridge Bank ("Blue Ridge") prior to the time that Advisors was formed. (*Id.* ¶ 18.)

From approximately April 2022 to October 2023, investors sent funds to Hedonova through an account held at Stripe, a payment processing company.[3]  (*Id.* ¶ 11.)  In addition to Blue Ridge and Stripe, at various times Hedonova also used bank ACH transfers, credit card payments, and a money transfer service, Wise, and another regional bank, Arival Bank, to receive investor funds.  (*Id.* ¶¶ 11, 28.)

A client list produced by Hedonova contained the names of approximately 85 investors with a purported aggregate investment amount totaling $1,710,778. Hedonova's financial records revealed that Hedonova received approximately $1,265,000 from investors on its client list and sent approximately $1,314,000 to this group of investors.  (*Id.* ¶¶ 10, 13.)

The SEC has identified additional deposits, bearing notations that they were investments in Hedonova, of about $2,537,000.  (*Id.* ¶ 14.)  Of these deposits, approximately $634,000 came from parties who were not included on the investor list

---

[3] The SEC has not been able to identify all uses Hedonova has made of investor money sent to the Stripe account because the records Stripe produced do not identify the counterparty for every transaction.  (*Id.* ¶ 17.)

MEMORANDUM OF POINTS AND AUTHORITIES

8

Hedonova produced to the SEC. (*Id.*) The sources of the remaining $1,903,000 of deposits are not identifiable from the financial records the SEC obtained. (*Id..*)[4]

The SEC has not identified payments to or from Masterworks, LexShares, Deloitte LLP, Deloitte Touche Tohmatsu Limited, Northern Trust, Citi, or Citco in the bank and other financial institution records for Hedonova. (*Id.* ¶ 19.)

**F.    Defendants Emphasized Hedonova's Purported Performance.**

Investors considered Hedonova's representations about Hedonova's investment portfolio and performance before making investment decisions. (*Id.* ¶ 26.) They believed that Hedonova's portfolio of alternative asset investments offered them exposure to asset classes that were not readily available to them in other funds. (*Id.* ¶ 27.) Multiple investors told the SEC that disclosures on Hedonova's website about its comparative rate of return to that of the S&P 500 influenced their decisions to invest. (*Id.*) To convince investors their investments in Hedonova were profitable and safe, Advisors sends investors monthly "quantitative reports" touting Hedonova's purported strong performance. (*Id.* ¶ 30, Ex. 8.)

**G.    Defendants Failed to Produce Evidence Corroborating**

**Their Representations.**

The SEC issued a subpoena for documents to Hedonova on September 28, 2023 seeking to substantiate its purported investment activity and its claimed relationships with financial institutions and professional firms . (*Id.* ¶ 31, Ex. 9.) Hedonova's production in response to the September 28, 2023 subpoena is incomplete. (*Id.* ¶ 32.) Hedonova has not produced copies of its audited or unaudited financial statements for any period covered by the SEC's subpoena. (*Id.* ¶ 33.)

---

[4] The remaining approximately $8,760,000 of funds received into the Hedonova accounts represent potential investor funds. These cannot be classified further because the records either do not include details as to the purpose of the transfer, the source of the funds was not contained on the investor list supplied by Hedonova, or the source of the funds was not identifiable in the records the SEC obtained. (Tatman Decl. ¶ 15.)

MEMORANDUM OF POINTS AND AUTHORITIES

9

Hedonova did identify accounts at four banks (one affiliated with Wise and one affiliated with Arival), but failed to provide any documentation substantiating relationships with HSBC, Citi, or Northern Trust. (*Id.* ¶¶ 11, 32.) Nor did Hedonova produce engagement letters, service contracts, or other documentation establishing current or former relationships with Haynie & Company or Deloitte LLP. (*Id.* ¶ 32.) As discussed above, these financial institutions and accounting firms have informed the SEC that they have not located any evidence showing a relationship with Hedonova.

Hedonova also failed to produce documents proving its current holdings in the alternative asset classes identified on its website. (*Id.* ¶ 34.) Instead, it produced a few documents including reports concerning the provenance and condition of several fine art paintings, miscellaneous documents from the Governments of India and Nepal, and pictures of what appear to be real estate parcels in Nepal. (*Id.*) Hedonova did not produce documentation proving that it owned assets with values corresponding to the amounts claimed on its website. (Kerstetter Decl. ¶ 38.)

The SEC issued another subpoena to Hedonova on April 4, 2024 requiring the production of additional documents, including documents relating to social media posts concerning Hedonova's purported investments and portfolio transactions, and awards received by Hedonova or Advisors. (Tatman Decl. ¶ 35.) Hedonova has not produced any documents responsive to the April 4, 2024 subpoena. (*Id.*)

The SEC issued a subpoena to Advisors on May 2, 2024 requesting the production of certain documents that registered investment advisers are required to keep pursuant to Rule 204-2(a) to Rule 204-2(c)(1)(i) under the Investment Advisers Act of 1940 ("Advisers Act"), including but not limited to journals, ledgers, and records of the purchase or sale of securities. (*Id.* ¶ 36.) Advisers Act Rule 204-2(e)(1) requires that such documents be retained in an "easily accessible place for a period of not less than five years from the end of the fiscal year during which the last entry was made on such record, the first two years in an appropriate office of the

MEMORANDUM OF POINTS AND AUTHORITIES

investment adviser." Advisors has not produced any documents to the SEC in response to the May 2, 2024 document request. (*Id.*)

When the SEC subpoenaed Bannerjee, Kumar, and Cavendish for investigative testimony, they declined to appear in the United States. Instead, they proposed to testify remotely. (Kerstetter Decl. ¶ 37.) Bannerjee and Cavendish proposed testifying from jurisdictions where such testimony would be prohibited by local law. (*Id*.) Kumar proposed to testify from a location where compelled testimony is not permitted, and voluntary testimony requires obtaining prior permission of the foreign government. Accordingly, the SEC has not taken the testimony of Bannerjee, Kumar, or Cavendish. (*Id*.)

## IV.    ARGUMENT

The SEC approaches the Court "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). The SEC seeks an accounting, expedited discovery, and a document preservation order in this case in accordance with this mission. Upon a proper showing, federal district courts routinely invoke their broad equity powers to grant such relief. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) ("Section 22(a) of the 1933 Act and Section 27 of the 1934 Act confer general equity powers upon the district courts. Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy.") (citations omitted). Here, such relief is necessary to identify the disposition of investor proceeds, obtain information about the persons controlling Defendants, preclude the destruction of documents, and effectuate the remedial purposes underlying the federal securities laws.

### A.    The SEC Seeks Ancillary Relief in the Public Interest

Because this enforcement action is brought in the public interest, the Court's "equitable powers assume an even broader and more flexible character than when

MEMORANDUM OF POINTS AND AUTHORITIES
11

only a private controversy is at stake." *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989) (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)). Currently, the SEC does not seek an injunction or asset freeze. Rather, it moves for the requested ancillary relief to obtain information that will allow the SEC to determine if moving for emergency relief such as a preliminary injunction is necessary. The SEC's burden for emergency ancillary relief is the same, if not lower, than what it must prove for a TRO. *Cf. SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998) (ancillary relief requires "a lesser showing" than for injunctive relief).

If the SEC were seeking a TRO, it would only be required to make a *prima facie* case and show a likelihood of repeat violations to secure that relief. In the Ninth Circuit, emergency injunctive relief may be ordered if there is "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in the applicant's favor." *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992) (quotations and citations omitted). Where the SEC shows a likely violation of federal securities laws, irreparable harm is presumed. *See SEC v. Schooler*, 902 F. Supp. 2d 1341, 1345 n.2 (S.D. Cal. 2012) (noting that the Ninth Circuit has held that "[i]n statutory enforcement cases where the government has met the 'probability of success' prong of the preliminary injunction test, we presume it has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public."). Unlike private litigants, "[t]he SEC need not prove reliance in its action for injunctive relief on the basis of violations of section 10(b) and Rule 10b-5." *SEC v. Rana Research, Inc.* 8 F.3d 1358, 1364 (9th Cir. 1993); *SEC v. Dropil, Inc.*, 2020 WL 7348021, at *4 (C.D. Cal. Oct. 23, 2020) (Ninth Circuit "has rejected" contention that SEC must plead reliance in Securities Act and Exchange Act enforcement).

Several district courts in the Ninth Circuit have interpreted the preliminary injunctive relief standard in SEC emergency actions to require that the SEC make

MEMORANDUM OF POINTS AND AUTHORITIES                    12

only a two-prong showing: (1) a *prima facie* case that the defendant has violated the federal securities laws, and (2) a reasonable likelihood that the defendant will repeat his violations. *See, e.g., SEC v. Muehler*, No. 2:18-cv-01677-CAS-SK, WL 2018 WL 1665637 (C.D. Cal. Apr. 4, 2018); *SEC v. San Francisco Regional Center, LLC*, No. CV 15-2563-RS, 2015 WL 9694808 (N.D. Cal. Mar. 23, 2017); *SEC v. Capital Cove Bancorp, LLC*, No. 8:15-cv-00980-JLS-JC, 2015 WL 9704076, at *5-6 (C.D. Cal. Sept. 1, 2015).

**B.      The SEC Has Made a Prima Facie Showing that Defendants Have Engaged in a Scheme to Defraud.**

The SEC has submitted compelling evidence to establish a *prima facie* case that Defendants have violated, and are continuing to violate, the antifraud provisions of the federal securities laws, that they have done so repeatedly since launching Hedonova in November 2021, and that they have made false statements with *scienter*.

**1.      Investments in Hedonova Are Securities.**

Investments in Hedonova are securities in the form of investment contracts. Section 2(a)(1) of the Securities Act, Section 3(a)(10) of the Exchange Act, and Section 202(a)(18) of the Advisers Act define "security" to include, among other things, "investment contracts."   An investment contract exists where: (1) a person invests his or her money; (2) in a common enterprise; and (3) is led to expect profits from the efforts of the promoter or a third party. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).   The Court explained that its definition of an investment contract "embodies a flexible . . . principle . . . capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."   *Id.* at 299.   The Court later reaffirmed its broad interpretation of an investment contract, noting that "Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and

MEMORANDUM OF POINTS AND AUTHORITIES                         13

by whatever name they are called." *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (internal citations and quotations omitted).

Investments in Hedonova meet the definition of an investment contract under *Howey*. Investors were solicited to invest money. The information in Advisors' statements and filings demonstrates a common enterprise under the "horizontal commonality" test, endorsed in the Ninth Circuit. *See, e.g., SEC v. Zera Fin. LLC*, 2023 WL 8269775, at *5 (C.D. Cal. Oct. 30, 2023) ("In the Ninth Circuit, the "common enterprise" prong of the *Howey* test is satisfied by a showing of either horizontal commonality (pooling of investor funds and interests) or strict vertical commonality (linking of fortunes of investors with those of promoters.") (*citing SEC v. R.G. Reynolds Ent., Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991) (Congress "enacted a definition of 'security' sufficiently broad to encompass virtually any instrument that might be sold as an investment.")). As described on Hedonova's website and its January 2021 PPM, and in Advisors' Form ADV, investments in Hedonova meet the definition of horizontal commonality. Investors' funds are pooled together and then invested together. In addition, Advisors describes itself as engaged in "Portfolio management for pooled investment vehicles (other than investment companies)" in its Form ADV.

Investments in Hedonova also involved the expectation of profits. The January 2021 PPM stated that Hedonova's "principal investment objective is the achievement of superior investment returns." The expected profitability of the investment was derived primarily from the efforts of others. Investors are called on to do nothing more than invest their money.

Therefore, investments in Hedonova constitute investment contracts and are securities within the meanings of Section 2(a)(1) of the Securities Act, Section 3(a)(10) of the Exchange Act, and Section 202(a)(18) of the Advisers Act.

MEMORANDUM OF POINTS AND AUTHORITIES

14

2.      Defendants Committed Fraud.

***Violations by Hedonova and Advisors.***  Section 17(a)(2) of the Securities Act prohibits any person, "in the offer or sale of any securities" from, directly or indirectly, "obtain[ing] money or property by means of any untrue statement of material fact" or any omission to state a material fact necessary to make statements made not misleading.  15 U.S.C. § 77q(a)(2). 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5.  "A violation of Section 10(b) and Rule 10b-5 is established if the defendant (1) made a material misrepresentation or omission (2) in connection with the purchase [or sale of a] security (3) with scienter (4) in interstate commerce.  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010).

Section 17(a)(1) of the Securities Act prohibits any person, "in the offer or sale of any securities," from employing "any device, scheme, or artifice to defraud," 15 U.S.C. § 77q(a)(1), or from engaging in "any transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon the purchaser," 15 U.S.C. § 77q(a)(3).  Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder make it unlawful for any person, "in connection with the purchase or sale of any security," "[t]o employ any device, scheme or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5(a), (c).

To be liable for a scheme to defraud, a defendant "must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."  *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008); *see also Middlesex Retirement Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1191 (C.D. Cal. 2007).  Under this "principal purpose and effect" test, an actor will be liable for a scheme to defraud if he or she participated in an activity with the "principal purpose and effect of creating a false appearance of fact in furtherance of the scheme," in connection with the purchase or sale of securities.  *Simpson*, 452 F.3d

MEMORANDUM OF POINTS AND AUTHORITIES

15

1040, 1050.

Hedonova and Advisors obtained investor money in violation of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by making material, false representations about key business relationships as described above, in documents including the Forms ADV for Advisors and Hedonova's website and PPM.  The Defendants' statements are plainly false and misleading for purposes of the federal antifraud securities laws. Furthermore, Defendants' false statements also constitute a scheme to defraud for purposes of Section 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.  In addition to the falsehoods described above concerning relationships with auditors, investment partners, and banks, Defendants sent investors statements designed to assure investors all was well with their investment.  *United States v. Shields*, No. CR12-00410, 2014 WL 4744617, at \*4 (N.D. Cal. Sept. 23, 2014) ("post-investment misrepresentations designed to lull investors into a false sense that their investments are safe can constitute securities fraud"); *SEC v. Wang*, No. LA CV 13-07553 JAK (SSx), 2015 WL 12656906, \*17 (C.D. Cal. Aug. 18, 2015).

Hedonova is a maker of the false statements contained on the Hedonova.io website and the PPM, which it used to obtain investor funds.  Advisors is also a maker of the statements on the website and in the Form ADV.  Attribution of a particular statement to a person or entity can be evidence that the person or entity is the maker of the statement. *See Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ("attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by . . . the party to whom it is attributed").  The website and the PPM attribute their content to Hedonova.  Advisors filed Forms ADV with the SEC stating that Hedonova Advisers has control of the website.

There is no question that a reasonable investor would have considered the

MEMORANDUM OF POINTS AND AUTHORITIES

16

information that Defendants did not actually have relationships with well-known financial services companies material to their decision to invest.

*Violations by Advisors.* Advisors also violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. Section 206(4) prohibits an investment adviser from, directly or indirectly, engaging in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. 15 U.S.C. § 80b-6(4). Rule 206(4)-8(a)(1) prohibits an investment adviser to "pooled investment vehicles" from making an untrue statement of material fact or omitting to state a material fact necessary to make the statements made not misleading to investors or prospective investors in the pooled vehicles. 17 C.F.R. § 275.206(4)-8(a)(1). Rule 206(4)-8(a)(2) provides that it is a fraudulent practice for an investment adviser to a pooled investment vehicle to engage in "fraudulent, deceptive, or manipulative" conduct with respect to any investor or prospective investor in the pooled vehicle. Examples of conduct prohibited by these requirements include providing false or misleading information to investors or prospective investors in their account statements and in private placement memoranda. *See SEC v. Rabinovich & Assocs., LP*, 2008 U.S. Dist. LEXIS 93595, at *7 & *11 (S.D.N.Y. 2008). Advisors is a registered investment adviser and Hedonova is a pooled investment vehicle within the meaning of Rule 206(4)-8.[5] As described above, Advisors made material false representations in its Forms ADV.

3. Defendants Acted With Scienter and Unreasonably

Claims under Sections 17(a)(1) and 10(b) require a showing of scienter. *Vernazza v. SEC*, 327 F.3d 851, 859-60 (9th Cir. 2003); *SEC v. Lyndon*, 27 F. Supp. 3d

---

[5] Hedonova meets the definition of a "pooled investment vehicle" in Rule 206(4)-8(b) of the Advisers Act because it would be an investment company under Section 3(a) of the Investment Company Act, 15 U.S.C. § 80a-3(a), but for its purported reliance on the exclusion provided by either Section 3(c)(1) or Section 3(c)(7), 15 U.S.C. §§ 80a-3(c)(1), 3(c)(7). Advisors also reported Hedonova as a private fund it advised on Form ADV.

MEMORANDUM OF POINTS AND AUTHORITIES

17

1062, 1075 (D. Haw. June 13, 2014); *Steadman*, 603 F.2d at 1130.  Scienter is proven with "'knowing or reckless conduct,' without a showing of 'willful intent to defraud.'" *Vernazza*, 327 F.3d at 860; *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990).  Sections 17(a)(2) and (a)(3) of the Securities Act and Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder only require a showing of negligence, which means the defendant failed to conform to the standard of care that would be exercised by a reasonable person.  *See Aaron v. SEC*, 446 U.S. 680, 691 & 697 (1980); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992).

Defendants' scienter is manifest.  Both entities made repeated false statements that Hedonova's assets were held with internationally reputable banks and custodians. They made false statements about working with highly respected auditors. Misrepresentations about basic governance—where money was kept, how financial information was reported and reviewed—go to the heart of investors' confidence in Hedonova's activities.  Both Hedonova and Advisors must have known that the statements they were making about these matters were false, and that they presented an obvious danger that investors would think they were investing in a project subject to meaningful external controls when in fact they were not.

**C.  Defendants' Violations Are Likely to be Repeated.**

In addition to making a *prima facie* showing that Defendants violated federal securities laws, the SEC has also shown a likelihood that these violations will be repeated.  Whether a likelihood of future violations exists depends upon the totality of the circumstances.  *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. Fehn*, 97 F.3d 1276, 1295-96 (9th Cir. 1996).  The existence of past violations may give rise to an inference that there will be future violations.  *See Murphy*, 626 F.2d at 655; *SEC v. United Financial Group, Inc.*, 474 F.2d 354, 358-59 (9th Cir. 1973); *see also United States v. Odessa Union Warehouse Co-Op*, 833 F.2d 172, 176 (9th Cir. 1987).  Courts also consider factors such as the degree of scienter involved, the isolated or recurrent nature of the violative conduct, the defendant's recognition of

MEMORANDUM OF POINTS AND AUTHORITIES

18

the wrongful nature of the conduct, the likelihood that, because of the defendant's occupation, future violations may occur, and the sincerity of defendant's assurances (if any) against future violations. *See Murph*y, 626 F.2d at 655. Defendants fail virtually all of these.

First, the fact that Defendants engaged in this scheme to defraud in the first instance triggers an inference that they are likely to do so again in the future. *See Murphy*, 626 F.2d at 655. Second, Defendants acted with a high degree of scienter demonstrated by the blatant misrepresentations made on the website, the January 2021 PPM, and Advisors' Forms ADV. Third, Defendants' conduct was not an isolated event. To the contrary, it was: (1) recurring, spanning more than two years, involving approximately at least 85 investors, and resulting in deposits of more than $12.5 million, of which at least $3.8 million came from confirmed or potential investors; and (2) evolving, as Defendants changed their representations about Hedonova's operations and governance over time. *SEC v. Skinner*, No. 21-cv-05273-SB-KS, 2022 WL 2784811, *8 (C.D. Cal. Jun. 17, 2022) (imposing permanent injunction based on violations occurring repeatedly, over the course of five years, and through several different companies). Fourth, Defendants have not shown any recognition of the wrongfulness of their conduct. To the contrary, the website continues to solicit investments, the Form ADV for Advisors continues to reference the website, and the SEC is not aware of any remedial steps taken by Defendants. Fifth, Hedonova continues to solicit investments, with one investor telling the SEC that he invested as recently as February 2024. In short, there is a likelihood Defendants will commit future violations. Finally, Defendants have not provided the SEC with adequate assurances against future violations and, in fact, Defendants have failed to comply with the SEC's subpoenas.

**D.    The Relief Sought by the SEC Is Needed.**

When, as here, the SEC establishes a *prima facie* case that the defendants have violated the federal securities laws and a reasonable likelihood that the defendants

MEMORANDUM OF POINTS AND AUTHORITIES

19

will repeat his violations, the Court's broad equitable powers to address the situation include the ability to impose ancillary relief. *See*, *e.g.*, *SEC v. Horwitz*, No. 21-cv-02927-CAS-PD at Dkt. No. 18 (C.D. Cal. Apr. 6, 2021); *SEC v. King*, No. 20-cv-02398-JVS-DFM at Dkt. No. 12 (C.D. Cal. Dec. 28, 2020).

Defendants have obstructed the SEC's investigation by refusing to produce basic business records, many of which Advisors is legally required to maintain and produce to the SEC on demand. Moreover, to the extent Hedonova has produced documents, they are incomplete and, in some cases, inconsistent with the financial records the SEC has been able to obtain from third parties or even Defendants' own records. For example, the SEC has identified multiple confirmed and prospective investors not included on the investor list Hedonova produced. Furthermore, although the SEC has been able to piece together some of Defendants' financial activity from third party records, those records do not always identify the counterparty for each transaction. Accordingly, the SEC has not been able to identify all sources of money sent to Defendants' accounts, or all uses Hedonova has made of investor money. The SEC has shown good cause for the relief it requests.

*Accounting.* To accurately determine the scope of a fraud and Defendants' ability to disgorge illicit proceeds, courts frequently require defendants to provide an accounting of funds or property procured by malfeasance, and to fully disclose their current financial assets. *See, e.g.*, *SEC v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990) ("If a court can order an overseas person to disgorge money, a fortiori, it can order such a person to perform an accounting the purpose of which is to identify assets subject to disgorgement."); *SEC v. Mattera,* No. 11 Civ. 8323(PKC), 2012 WL 4450999, at *10–11 (S.D.N.Y. Sept. 26, 2012) (holding defendant in contempt for violating accounting provisions). Here, the SEC asks this Court to order both Defendants to prepare and deliver to the SEC a sworn, detailed, and complete accounting of: (1) all investments made into Hedonova, (2) the uses made of all investments made into Hedonova and the current location and amounts of any

MEMORANDUM OF POINTS AND AUTHORITIES

20

remaining balances; (3) the description, value and location of all assets held by Hedonova; (4) the names and contact information of all persons who have invested in Hedonova; (5) the names and contact information of all clients of Advisors; and (6) the description, value and location of all assets managed by Advisors, other than assets held by Hedonova.

***Document Preservation Order.***   To protect all documents necessary for full discovery in this matter, the SEC seeks an order preventing the alteration or destruction of documents and other information.  *See SEC v. Wencke*, 622 F.2d 1363, at 1369  (9th Cir. 1980).  Such orders are routinely granted to protect the integrity of litigation.  *See*, *e.g.*, *SEC v. Horwitz*, No. 21-cv-02927-CAS-PD at Dkt. No. 18 (C.D. Cal. Apr. 6, 2021); *SEC v. King*, No. 20-cv-02398-JVS-DFM at Dkt. No. 12 (C.D. Cal. Dec. 28, 2020).

***Expedited Discovery.***   Rules 30(a), 33(b), and 34(b) of the Federal Rules of Civil Procedure provide for expedited discovery in appropriate circumstances.  *See* Advisory Committee Notes to the 1993 amendments to Rule 26(d) ("[Expedited discovery] will be appropriate in some cases, such as those involving requests for a preliminary injunction.").  Courts often grant the SEC leave to take expedited discovery in anticipation of such a hearing.  *See, e.g.*, *Mattera*, 2012 WL 4450999, at *10–11 (holding defendant in contempt for violating expedited discovery provisions).  Here, the SEC seeks to take discovery on an expedited basis to obtain information that Defendants have failed to produce to date.  Given the Defendants' brazen lies, the SEC needs expedited discovery because the Defendants' offering is still ongoing; and the Defendants have obstructed the SEC's investigation.  Accordingly, the SEC requests that the Court enter an order granting expedited discovery.

## V.    CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant this motion and enter an order: (1) requiring Defendants to produce an accounting; (2) allowing the parties to conduct expedited discovery; and (3) prohibiting

MEMORANDUM OF POINTS AND AUTHORITIES                                      21

Defendants from destroying documents.

Dated:  June 25, 2024

/s/Alec Johnson_____
Alec Johnson
Attorney for Plaintiff U.S. Securities and Exchange Commission

MEMORANDUM OF POINTS AND AUTHORITIES

22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff SEC, certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1, and does not exceed 25 pages in length.

Dated:  June 25, 2024

/s/Alec Johnson
Alec Johnson
Attorney for Plaintiff U.S. Securities and
Exchange Commission

MEMORANDUM OF POINTS AND AUTHORITIES

23