BELINDA I. MATHIE (IL Bar No. 6275461)
*PRO HAC VICE*
Email:  MathieB@sec.gov
LEE FARNSWORTH (IL Bar No. 6332666)
*PRO HAC VICE*
Email: FarnsworthL@sec.gov
175 West Jackson Blvd, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Attorneys for Plaintiff
United States Securities and Exchange Commission

LOCAL COUNSEL
Douglas M. Miller (CA Bar No. 240398)
Email: millerdou@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>HEDONOVA LLC and HEDONOVA ADVISORS LLC<br><br>Defendants. | Case No. 2:24-CV-05293-CV-E<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANTS HEDONOVA LLC AND HEDONOVA ADVISORS LLC**<br><br>Date:    September 26, 2025<br>Time:    1:30 pm<br>Ctrm:    10B<br>Judge:   Hon. Cynthia Valenzuela |

**TABLE OF CONTENTS**

I.    PROCEDURAL HISTORY ...................................................................................1

II.   STATEMENT OF FACTS ................................................................................2

    A.    Hedonova and Hedonova Advisors Offered Alternative Investments......2

    B.    Defendants Offered and Sold Securities by Means of False and Misleading Statements ................................................................................4

        1.    False and misleading statements in the January 2021 PPM ...........4

        2.    False and misleading statements on the Hedonova.io website and Hedonova Advisors' Forms ADV ............................5

        3.    Defendants' misstatements were material and Defendants also engaged in lulling activities..................................................7

        4.    Defendants shared purported executives .......................................8

    C.    Defendants Obtained Millions of Dollars from Investors........................8

    D.    Defendants Did Not Corroborate Their Representations.........................8

III.  ARGUMENT.....................................................................................................9

    A.    This Court Has Both Subject Matter and Personal Jurisdiction ..............9

    B.    Standards for Entry of Default Judgment...............................................10

    C.    The *Eitel* Factors Support Entry of Judgment.........................................11

        1.    Possibility of prejudice to the SEC ..............................................11

        2.    Substantive merits and sufficiency of the Complaint...................12

        3.    Amount at stake ............................................................................18

        4.    Possibility of disputed facts .........................................................18

        5.    Possibility of excusable neglect....................................................18

        6.    Policy for deciding on the merits..................................................19

    D.    The SEC Is Entitled to the Relief It Seeks .............................................19

        1.    Defendants should be permanently enjoined................................19

        2.    A conduct-based injunction is appropriate ..................................21

      3.    Defendants should be held liable for disgorgement and prejudgment interest on a joint-and-several basis ........................21

      4.    Hedonova Advisors should pay a substantial civil penalty ..........24

IV.    CONCLUSION.................................................................................................25

**TABLE OF AUTHORITIES**

**CASES**

*Aaron v. SEC,*
   446 U.S. 680 (1980)................................................................................17

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ..............................................................10

*Benny v. Pipes*,
   799 F.2d 489 (9th Cir. 1986) ................................................................12

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) ........................................11, 12, 18, 19

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976)................................................................................17

*Fitzsimmons v. Barton*,
   589 F.2d 330 (7th Cir. 1979) ................................................................10

*Hocking v. Dubois*,
   885 F.2d 1449 (9th Cir. 1989) ..............................................................13

*In re Tuli,*
   172 F.3d 707 (9th Cir. 1999) ..................................................................9

*Janus Capital Grp., Inc. v. First Derivative Traders,*
   564 U.S. 135 (2011)..........................................................................14, 15

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,
   725 F. Supp. 2d 916 (C.D. Cal. 2010)..................................................11

*Liu v. SEC,*
   140 S. Ct. 1936 (2020)..............................................................21, 22, 23

*Lorenzo v. SEC,*
   139 S. Ct. 1094 (2019)............................................................................16

*Malouf v. SEC,*
   933 F.3d 1248 (10th Cir. 2019) ............................................................16

*Mullane v. Central Hanover Trust Co.*,

339 U.S. 306 (1950)........................................................................................ 18-19

*PepsiCo, Inc. v. Cal. Sec. Cans*,

238 F. Supp. 2d 1172 (C.D. Cal. 2002)......................................2, 11, 12, 18, 19

*PepsiCo, Inc. v. Triunfo-Mex. Inc.*,

189 F.R.D. 431 (C.D. Cal. 1999)..............................................................................11

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*,

506 U.S. 194, 113 S. Ct. 716 (1993) ........................................................................9

*Sec. Inv'r Prot. Corp. v. Vigman*,

764 F.2d 1309 (9th Cir. 1985) ................................................................................10

*SEC v. Baccam*, No. ED CV 17-0172 SJO (SPx),

2017 WL 5952168 (C.D. Cal. June 14, 2017)......................................................18

*SEC v. Beck*,  No. 2:22-cv-00812-FWS-JC

2024 WL 1626280 (C.D. Cal. Mar. 26, 2024) ....................................................17

*SEC v. BIC Real Estate Dev. Corp.*, No. 1:16-cv-00344-LJO-JLT,

2017 WL 1740136 (E.D. Cal. May 4, 2017).........................................................25

*SEC v. Chappell*,

107 F.4th 114 (3d Cir. 2024) ..................................................................................20

*SEC v. CMKM Diamonds, Inc.*,

729 F.3d 1248 (9th Cir. 2013) ................................................................................18

*SEC v. Dalius,* No. 2:18-cv-08497-FWS-E,

2023 WL 3988425 (C.D. Cal. May 24, 2023)......................................................13

*SEC v. Dain Rauscher, Inc.,*

254 F.3d 852 (9th Cir. 2001) ..................................................................................14

*SEC v. Duncan*, No. CV 08-1323-VAP (OPx),

2009 WL 10670521 (C.D. Cal. July 6, 2009) ......................................................24

*SEC v. Drake*, No. 2:20-cv-00405 MCS (PLAx),

2021 WL 12299079 (C.D. Cal. Oct. 7, 2021) ......................................................21

iv

*SEC v. Hui Feng,*
935 F.3d 721 (9th Cir. 2019) .......................................................................14, 15, 16, 17

*SEC v. Johnson*, No. 5:20-cv-01493-MCS-SHK,
2022 WL 17886033 (C.D. Cal. Jun 29, 2022).............................................24, 25

*SEC v. Mgmt. Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975) ...............................................................20

*SEC v. Mizrahi*, No. CV 19-02284 PA-JEM,
2020 WL 6114913 (C.D. Cal. Oct. 5, 2020) ................................................ 22-23

*SEC v. Moleski*, No. 2:21-cv-01065-SVW-E,
2021 WL 6752254 (C.D. Cal. Oct. 21, 2021) ................................................16

*SEC v. Jocelyn M. Murphy, et al.*, Nos. 21-55178, 21-55180,
2022 WL 4866712 (9th Cir. Oct. 4, 2022) ......................................................24

*SEC v Stephen Murphy*,
626 F.2d 633 (9th Cir. 1980) ......................................................................24

*SEC v. Neman*, No. CV-12-03142-BRO (PLAx),
2016 WL 6661174 (C.D. Cal. July 15, 2016) ..................................................12

*SEC v. Pacheco*, No. CV 19-958-MWF (AFM),
2020 WL 5100844 (C.D. Cal. Apr. 3, 2020).......................................................9

*SEC v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) ...............................................................21, 23

*SEC v. Premier Holding Corp.*, No. 21-55249,
2022 WL 541194 (9th Cir. Feb. 23, 2022)........................................................22

*SEC v. Rana Research*,
8 F.3d 1358 (9th Cir. 1993) ...................................................................16

*SEC v. Nguyen,* No. 8:19-cv-01174-SVW-ICES,
2024 WL 3381583 (C.D. Cal. Feb. 23, 2024) ..................................................21

*SEC v. Rubera*,
350 F.3d 1084 (9th Cir. 2001).............................................................13

*SEC v. Smith*, No. CV 20-1056 PA (SHKx),

    2020 WL 6712257 (C.D. Cal. Oct. 19, 2020) ...................................................23

*SEC v. Steadman*,

    967 F.2d 636 (1992) ...........................................................................................18

*SEC v. Telegram Grp. Inc.*,

    448 F. Supp. 3d 352 (S.D.N.Y. 2020) ...............................................................13

*SEC v. Tellone Mgmt. Grp., Inc.*, No. 8:21-cv-01413-FWS-ADS,

    2022 WL 18582314 (C.D. Cal. Dec. 19, 2022)........................................... 17-18

*SEC v. W.J. Howey Co.*,

    328 U.S. 293 (1946)....................................................................................... 12-13

*Starbucks Corp. v. McKinney*,

    144 S. Ct. 679 (2024)..........................................................................................20

*Stormans, Inc. v. Selecky*,

    586 F.3d 1109 (9th Cir. 2009) ...........................................................................20

*TeleVideo Sys., Inc. v. Heidenthal*,

    826 F.2d 915 (9th Cir. 1987) .............................................................................18

*United Housing Found., Inc. v. Forman*,

    421 U.S. 837 (1975)............................................................................................12

*United States v. Cal. Dep't of Corr. & Rehab.*,

    737 F. Supp. 3d 977 (E.D. Cal. 2024) ...............................................................20

*Winter v. Nat. Res. Def. Council, Inc.*,

    555 U.S. 7, 129 S. Ct. 365 (2008) .....................................................................20

**FEDERAL STATUTES**

15 U.S.C. § 77q, Securities Act of 1933 Section 17(a) ................................... 13, 15-17

15 U.S.C. § 77t(b), Securities Act of 1933 Section 20(b) ................................. 9, 19-20

15 U.S.C. § 77t(d), Securities Act of 1933 Section 20(d) ................................9, 24, 25

15 U.S.C. § 77v, Securities Act of 1933 Section 22................................................9, 10

15 U.S.C. § 78j, Securities Exchange Act of 1934 Section 10(b) ........................13, 16

15 U.S.C. § 78u(d), Securities Exchange Act of 1934

    Section 21(d)......................................................9-10, 19, 21, 22, 24-25

15 U.S.C. § 78u(e), Securities Exchange Act of 1934 Section 21(e)...................... 9-10

15 U.S.C. § 78aa, Securities Exchange Act of 1934 Section 27 .............................9, 10

15 U.S.C. § 80b-1, Investment Advisers Act of 1940, Section 201 ...........................20

15 U.S.C. § 80b-2(a)(11), Investment Advisers Act of 1940 Section 202(a) .............16

15 U.S.C. § 80b-6(4), Investment Advisers Act of 1940 Section 206(4)........ 16, 17-18

15 U.S.C. § 80b-9(d), Investment Advisers Act of 1940 Section 209(d)..............10, 19

15 U.S.C. § 80b-9(e), Investment Advisers Act of 1940 Section 209(e) ........ 10, 24-25

15 U.S.C. § 80b-14 Investment Advisers Act of 1940 Section 214 ...........................10

28 U.S.C. § 1331 .....................................................................................................9

28 U.S.C. § 6621(a)(2)............................................................................................23

**FEDERAL RULES**

17 C.F.R. § 240.10b-5, Rule 10b-5 under the

    Securities Exchange Act of 1934.......................................13, 14, 16, 20

17 C.F.R. § 275.206(4)-8, Rule 206(4)-8 under the

    Investment Advisers Act of 1940 ...............................................16, 20

Fed. R. Civ. P. 54(c).........................................................................................11, 19

Fed. R. Civ. P. 55(a)...........................................................................................2, 19

Fed. R. Civ. P. 55(b) ..........................................................................................1, 19

Fed. R. Civ. P. 55(b)(2) 1

**LOCAL RULES**

Local Rule 55-1..........................................................................................................9

Plaintiff Securities and Exchange Commission ("SEC") moves for entry of a default judgment as to Defendants Hedonova LLC ("Hedonova") and Hedonova Advisors LLC ("Hedonova Advisors") (collectively, "Defendants") in accordance with Federal Rule of Civil Procedure 55(b)(2) on all claims alleged in the SEC's Complaint. The SEC seeks a judgment: (1) permanently enjoining Defendants from violating the federal securities laws; (2) permanently enjoining them from engaging in certain conduct involving securities; (3) ordering them, on a joint and several basis, to disgorge their net profits from their violations, together with prejudgment interest; and (4) imposing a civil penalty on Hedonova Advisors.

## I.      PROCEDURAL HISTORY

The SEC filed its Complaint in this action on June 24, 2024. (ECF 1.) On June 26, 2024, the SEC served the Complaint and Summons on Hedonova Advisors in Delaware and Hedonova in Idaho via their respective registered agents. (ECF 17, 18.) On June 27, 2024, counsel entered an appearance on behalf of Defendants. (ECF 16.) During this litigation, Defendants' legal representation changed several times, but Defendants remained represented. (*See* ECF 21, 22, 31, 35, 42, 44, 55, 59-61.) Defendants answered the Complaint on August 7, 2024 (ECF 36) and filed an Amended Answer on August 14, 2024 (ECF 45).

The litigation proceeded, with the parties entering into several stipulations, including a stipulation for a preliminary injunction. (ECF 19, 34, 50.) The Court entered the stipulated Order of Preliminary Injunction ("Preliminary Injunction") on November 18, 2024. (ECF 51.) Among other things, the Preliminary Injunction preliminarily enjoined Defendants from violations of certain provisions of the federal securities laws and from participating in the issuance, purchase, offer, or sale of securities to any investor located in the United States. (*Id.*) It also required Defendants to post a link to the SEC's Complaint and the Preliminary Injunction on their website and mobile application software, and Hedonova Advisors to file an amended Form ADV with the SEC. (*Id.*)

SEC'S MOTION FOR DEFAULT JUDGMENT      1

On March 25, 2025, while discovery was ongoing, counsel who then represented the Defendants filed a motion for leave to withdraw, citing "an irreparable breakdown of the attorney-client relationship." (ECF 65 at 2.) The Court held a hearing on counsel's motion to withdraw on May 9, 2025. (ECF 69.) On May 12, 2025, the Court issued an order granting counsel's motion to withdraw ("May 12 Order"). (ECF 70.) The May 12 Order required counsel to serve Defendants with a copy of the May 12 Order and to file a proof of service thereof (*id.* at 4), which counsel did on May 20, 2025 (ECF 71). Accordingly, defense counsel are deemed withdrawn as counsel of record. (*See* ECF 70 at 4.)

The May 12 Order also set a 30-day deadline for Defendants to file a notice with the Court that they had retained new counsel. (*Id.*) The Court noted that only individuals may proceed *pro se* in federal court, and that no organization or entity of any kind may appear in any action or proceeding unless represented by an attorney permitted to practice before the Court. (*Id.*) Nonetheless, Defendants failed to file a notice that they had retained new counsel by the June 11, 2025 deadline. Consequently, on June 26, 2025, the SEC requested that the Clerk enter default because Defendants are entities and cannot proceed *pro se* in this action. (ECF 76 at 2.) On July 7, 2025, the Clerk entered a default pursuant to Rule 55(a). (ECF 79.)

## II.    STATEMENT OF FACTS

After a default has been entered, the well-pleaded factual allegations of the Complaint are taken as true, except for those allegations relating to damages. *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

### A.    Hedonova and Hedonova Advisors Offered Alternative Investments

Between at least November 2021 to June 2024, Defendants conducted a fraudulent investment scheme by raising money from investors while making materially false statements about Hedonova's investments as well as its operations and governance. (ECF 1 ¶ 5.) In addition, Hedonova Advisors made materially false statements about itself and Hedonova in the Form ADV it filed with the SEC in

SEC'S MOTION FOR DEFAULT JUDGMENT    2

September 2023. (*Id.* ¶ 6.) In May 2024, Hedonova was the subject of a California state administrative desist and refrain order in connection with its securities investment business which found, among other things, that Hedonova had made untrue statements of material fact in connection with the offer and sale of its securities. (*Id.* ¶ 12.) During the relevant period, accounts held in the name of Hedonova received at least $12.5 million. (*Id.* ¶ 5.)

Hedonova was formed in April 2021 under the laws of Delaware and was domesticated in Idaho in September 2023. (*Id.* ¶ 12.) Hedonova represented to investors that it was a "mutual fund, but for alternative assets." (*Id.* ¶ 5.) At various times, Hedonova listed its principal place of business as Dover, Delaware and Meridian, Idaho, and has purported to do business in Los Angeles, California. (*Id.*)

Hedonova Advisors was formed in August 2022 under the laws of Delaware. (*Id.* ¶ 13.) On September 29, 2023, Hedonova Advisors registered with the SEC as an investment adviser by filing a Form ADV. (*Id.*) The Form ADV identified Hedonova Advisors' principal office and place of business as an address in Los Angeles, California. (*Id.*) On March 29, 2024, Hedonova filed an updated Form ADV changing its principal office and place of business to an address in Post Falls, Idaho. (*Id.*)

Between at least November 2021 and February 2024, Defendants offered and sold securities in the form of limited liability company membership interests in Hedonova through general solicitations on Hedonova's website. The membership interests were investment contracts. An investment contract is an instrument through which a person invests money in a common enterprise with expectations of profits or returns produced by the entrepreneurial or managerial efforts of others. (*Id.* ¶¶ 15-16.)

Hedonova offered its membership interests to investors through a Private Offering Memorandum dated January 2021 ("January 2021 PPM") and later, a Private Placement Memorandum dated October 2022 (collectively, "PPMs"). (*Id.* ¶ 21.) The January 2021 PPM represented to investors that Hedonova's "goal is to generate outstanding returns on a rolling 24-36 month time horizon." (*Id.* ¶ 22.)

SEC'S MOTION FOR DEFAULT JUDGMENT    3

Hedonova claimed it would do this by investing in "alternative assets" including startups, artwork, film and media royalties, litigation funding, and cryptocurrencies. (*Id.* ¶ 26.) Defendants solicited investments of at least $5,000; later raised to $10,000. (*Id.* ¶ 17.) Hedonova represented to investors that their money would "purchase parts of the fund, called 'blocks,'" and that the investors would "make a profit when the overall value of [Hedonova] increases." (*Id.* ¶ 18.)

Investors invested money in response to Hedonova's solicitations. (*Id.* ¶ 19.) The money they invested was pooled into accounts with an online payment processor and an online money transfer service. (*Id.*) Some of the pooled investor money was subsequently transferred into accounts held by Hedonova at various online and regional banks. (*Id.*) Additionally, Hedonova Advisors described itself in its Form ADV as being engaged in "Portfolio management for pooled investment vehicles (other than investment companies)." (*Id.* ¶ 20.) Investors were not expected to take any action to generate profits beyond investing their money. (*Id.* ¶ 23.)

**B.    Defendants Offered and Sold Securities by Means of False and Misleading Statements.**

**1.    False and misleading statements in the January 2021 PPM**

Hedonova made multiple false statements about its operations and governance in the January 2021 PPM. For example, it claimed that a Big Four accounting firm was Hedonova's auditor, a Chicago-based financial services firm was its administrator, and an international bank was its bank. (*Id.* ¶ 27.) However, when these entities reviewed their records in response to inquiries from the SEC, none of them found any evidence of ever having a relationship with Hedonova. (*Id.* ¶ 28.) While Hedonova did not have an account with the international bank identified in the January 2021 PPM, Hedonova did open an account at a regional bank in October 2021. (*Id.* ¶ 30.) It accepted its first investment in that account in November 2021. (*Id.*) Hedonova did not mention the regional bank in any of the promotional materials the SEC identified. (*Id.*) The January 2021 PPM also stated that "Hedonova Advisors

SEC'S MOTION FOR DEFAULT JUDGMENT    4

LLC, a Delaware company" was Hedonova's manager, even though Hedonova Advisors was not formed in Delaware until August 2022. (*Id.* ¶ 29.)

### 2. False and misleading statements on the Hedonova.io website and Hedonova Advisors' Forms ADV.

Hedonova maintained a website available to the public located at Hedonova.io. (*Id.* ¶ 34.) Hedonova Advisors stated that it had control over the content of the website in Forms ADV filed in September 2023 and March 2024. (*Id.* ¶ 41.) Until Defendants modified the website in response to the Preliminary Injunction (ECF 51), the website claimed that Hedonova was a "mutual fund, but for alternative assets." (*Id.* ¶ 35.) The website stated that investor money would be distributed among alternative asset classes such as litigation finance, startup companies, wine and spirits, real estate, and fine art. (*Id.*) The website claimed impressive investment returns, including a 38.78% net internal rate of return, a 53.16% compound annual growth rate, and, as of October 2023, "106.27% Alpha over S&P 500." (*Id.* ¶ 36.)

Prior to Fall 2023, Hedonova's website claimed that it used a specific fine art investing platform to invest in fine art and a specific litigation funding platform to make litigation finance investments. (*Id.* ¶ 37.) At that time, the website also stated that the same Big Four accounting firm identified in the January 2021 PPM was Hedonova's auditor. (*Id.*) These representations were all false. (*Id.* ¶ 38.) The records of Hedonova's known financial accounts reflect no transfers to the fine art investing platform or the litigation funding platform. (*Id.* ¶ 48.) In January 2023, the fine art investing platform and Big Four accounting firm both sent Hedonova cease-and-desist letters after learning about the claims on the Hedonova.io website. (*Id.*) In or around Fall 2023, Hedonova revised its website to delete the references to the fine art investing platform and Big Four accounting firm. (*Id.* ¶ 40.)

Hedonova Advisors stated in both its 2023 and 2024 Forms ADV that certain of its books and records were kept in the London office of a different Big Four accounting firm than the one identified in the January 2021 PPM and Hedonova.io

SEC'S MOTION FOR DEFAULT JUDGMENT     5

website. (*Id.* ¶ 42.) However, representatives of that second Big Four accounting firm were unable to locate any information showing a relationship with Hedonova Advisors in the firm's internal conflicts database. (*Id.*) And the records for Defendants' known financial accounts reflect no payments for services rendered by either of the Big Four accounting firms. (*Id.* ¶ 48, 68.)

Furthermore, none of Hedonova's known accounts with financial institutions reflect the amount of activity claimed in Hedonova Advisors' 2023 or 2024 Forms ADV. (*Id.* ¶ 43.) The 2023 Form ADV reported that Hedonova's gross asset value was $704,000,000. (*Id.* ¶ 44.) The 2024 Form ADV reported Hedonova's gross asset value as $823,806,987. (*Id.* ¶ 45.) However, in March 2024, during the SEC investigation preceding this case, Hedonova produced to the SEC an undated document purporting to be a portfolio allocation schedule reporting holdings with market values totaling only $79,304,244. (*Id.* ¶ 46.) Defendants also produced a purported list of investors in Hedonova that included approximately 85 investors with an aggregate investment amount of only $1,710,778. (*Id.* ¶ 47.)

As of November 1, 2023, the Hedonova.io website made claims about Defendants' supposed relationships with several reputable accounting firms and banks. (*Id.* ¶¶ 50-54.) The website listed a well-known accounting firm as the auditor for Hedonova, two international banks as "Bankers," and a Chicago-based financial services firm as "Custodian." (*Id.* ¶¶ 50-51.) The website explained that "Auditors ensure we follow the best accounting practices, standards, and protocols. They also review our valuation methods and how they are implemented." (*Id.* ¶ 50.) It also stated that "Hedonova is in charge of all investment decisions. However, the fund's assets are held by custodians who act in the best interest of the investors." (*Id.* ¶ 51.) The website even displayed the logos of both international banks and the Chicago-based financial services firm. (*Id.* ¶ 51.)

Hedonova Advisors' 2023 and 2024 Forms ADV made similar claims, listing a purported Dublin, Ireland affiliate of the Chicago-based financial services firm as the

SEC'S MOTION FOR DEFAULT JUDGMENT    6

custodian of funds, and identifying a specific London-based affiliate of one of the Big Four accounting firms as Hedonova's auditor. (*Id.* ¶¶ 52-53.) These representations were also false. Each of the professional services firms listed on the Hedonova.io website as auditor, banker, or custodian informed the SEC that it had no record of Defendants ever having been a client. (*Id.* ¶ 54.) Moreover, the Chicago-based financial services firm informed the SEC that its purported affiliate supposedly located in Dublin, Ireland does not exist. (*Id.* ¶ 55.) Finally, the international banks identified on the Hedonova.io website as "Bankers" maintain controls around the use of their corporate names and logos. (*Id.* ¶ 56.) Both international banks searched their brand control records and determined that Hedonova's use of their names and logos was unauthorized. (*Id.*)

Sometime between February 8, 2024 and March 1, 2024, Hedonova removed the reference to the Chicago-based financial services firm as "Custodian" from its website and added a reference to a global hedge fund administrator as Hedonova's "Administrator," including a copy of the hedge fund administrator's logo. (*Id.* ¶ 57.) But this new representation was also false. The global hedge fund administrator did not provide services to Hedonova and did not authorize the use of its name and logo on the Hedonova.io website. (*Id.* ¶ 58.)

### 3. Defendants' misstatements were material and Defendants also engaged in lulling activities.

Investors considered Hedonova's representations about its investment portfolio and performance before making investment decisions. (*Id.* ¶ 59.) They believed that Hedonova's portfolio of alternative asset investments offered them access to asset classes that were not readily available to them in other funds. (*Id.*) Investors' decisions to invest were influenced by the claims on Hedonova's website about its rate of return compared to that of the S&P 500. (*Id.*)

To convince investors that their investments were profitable and safe, Hedonova Advisors sent investors monthly "quantitative reports" touting Hedonova's

SEC'S MOTION FOR DEFAULT JUDGMENT    7

purported strong performance. (*Id.* ¶ 60.) On May 1, 2024, Hedonova Advisors sent at least one investor a quantitative report purporting to address Hedonova's April 2024 performance. (*Id.*)

### 4.  Defendants shared purported executives.

Hedonova Advisors' 2023 Form ADV identifies Alexander Cavendish, Munish Kumar, and Suman Bannerjee as the principals of Hedonova. (*Id.* ¶ 7.) The Form ADV lists the same individuals as control persons of, and persons with an ownership interest in, Hedonova Advisors. (*Id.*) Cavendish, Kumar, and Bannerjee, together with other persons associated with Defendants, knowingly made and disseminated the false and misleading statements described above, or recklessly allowed those false and misleading statements to be disseminated. (*Id.* ¶¶ 33, 61.)

### C.  Defendants Obtained Millions of Dollars from Investors

From approximately November 2021 through October 2023, accounts in the name of Hedonova received approximately $12.5 million in deposits. (*Id.* ¶ 62.) Hedonova had investors deposit their funds into accounts at regional banks, payment processors, and money transfer services. (*Id.* ¶¶ 63-65.) At various times, Hedonova used bank ACH transfers and credit cards to receive investor funds. (*Id.* ¶ 65.)

### D.  Defendants Did Not Corroborate Their Representations

During the investigation preceding this litigation, the SEC issued several subpoenas for documents to Defendants. (*Id.* ¶¶ 69-73.) The resulting productions were incomplete and failed to substantiate Defendants' claims concerning Hedonova's purported investment activity and supposed relationships with well-known financial institutions and professional firms. (*Id.* ¶¶ 70-71.) For example, Hedonova failed to produce engagement letters, service contracts, or any other documentation establishing current or former relationships with the accounting firms identified in Hedonova's PPMs and the Hedonova.io website. (*Id.*)

Similarly, Hedonova Advisors failed to respond to a subpoena requesting the production of certain documents that registered investment advisers are required to

keep by law in an easily accessible place. (*Id.* ¶ 73.) These documents include journals, ledgers, records of purchase and sale of securities, checkbooks, bank statements, audited financial statements, and client agreements. (*Id.*) Furthermore, when subpoenaed for investigative testimony, Defendants' purported senior executive officers, who Defendants claimed resided abroad, declined to appear in the United States. (*Id.* ¶¶ 7, 74.)

## III.   ARGUMENT

A "corporation may appear in the federal courts only through licensed counsel. . . the rationale for that rule applies equally to all artificial entities." *Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993). Defendants' failure to retain counsel makes entry of default judgment appropriate here. *See* ECF 66 at 2 ("Movants are further ordered to notify Defendants that they are not permitted to represent themselves *pro se* in this Court, and . . .they will be found in default if they have not obtained alternative counsel."); *SEC v. Pacheco*, No. CV 19-958-MWF (AFM), 2020 WL 5100844, at *2 (C.D. Cal. Apr. 3, 2020) (granting defense counsel's motion to withdraw and setting deadlines for SEC to seek default if entity defendants failed to file notice of retention of new counsel).

Local Rule 55-1 requires that an application for default judgment be accompanied by a declaration setting forth certain information, which is contained in the Declaration of BeLinda I. Mathie ("Mathie Decl."), filed concurrently.

### A.   This Court Has Both Subject Matter and Personal Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). As alleged in the Complaint, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d), and 22 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v], Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

SEC'S MOTION FOR DEFAULT JUDGMENT      9

§§ 78u(d), 78u(e), and 78aa], and Sections 209(d), 209(e)(1), and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1), and 80b-14]. (ECF 1 ¶ 2.) *See also Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313 (1985) ("jurisdiction to consider claims brought under the [Exchange] Act is vested exclusively in federal courts").

The Securities Act, Exchange Act, and Advisers Act all authorize nationwide service of process. *See* 15 U.S.C. § 77v(a); § 78aa; § 80b-14. Where the Court's personal jurisdiction is predicated on federal statutes authorizing nationwide service of process, the personal jurisdiction analysis focuses on Defendants' contacts with the United States as a whole, rather than the forum state only. *See Vigman*, 764 F.2d at 1316 ("so long as a defendant has minimum contacts with the United States . . . the [Exchange] Act confers personal jurisdiction over the defendant in any federal district court"); *see also Fitzsimmons v. Barton,* 589 F.2d 330, 332-33 (7th Cir. 1979) (same).

Here, Defendants have sufficient minimum contacts with the United States to establish this Court's personal jurisdiction over them. Defendants are limited liability companies organized under the laws of Delaware (Hedonova Advisors) and Idaho (Hedonova). (ECF 1 ¶ 12, 13.) Both purported to do business in California and Idaho at various times. (*Id.*) Hedonova Advisors registered with the SEC as an investment adviser by filing a Form ADV on September 29, 2023. (*Id.* ¶ 13.) Defendants raised millions of dollars from investors who resided in various states throughout the United States. (*Id.* ¶¶ 24, 62, 66-67.) Moreover, of the investor-victims the SEC has been able to identify, approximately 28 reside in California, with approximately 11 residing in this district. (*Id.* ¶¶ 4, 24.) The Court's exercise of personal jurisdiction over Defendants is entirely appropriate.

### B.    Standards for Entry of Default Judgment

Entry of default judgment is left to the Court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court should consider the following factors when ruling on a motion for default judgment: (1) the possibility of

SEC'S MOTION FOR DEFAULT JUDGMENT    10

prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex. Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

The SEC has satisfied the procedural requirements for a default judgment. Namely, the SEC has (1) served Defendants with the Summons and Complaint (ECF 17, 18); (2) caused the Clerk to enter defaults against Defendants for failure to be represented by counsel (ECF 76, 79); (3) given notice of this Motion to Defendants' Registered Agents (Proofs of Service attached hereto and to Notice of Motion); (4) confirmed that Defendants are not infants, incompetent persons, or members of the military; and (5) notified them in the Notice of Motion and Motion, as well as in the Complaint, of the relief requested. (Mathie Decl. ¶¶ 5, 13-17.) Additionally, because the SEC requests only the relief prayed for in the Complaint, this Motion complies with Rule 54(c). Accordingly, the Court need only weigh the *Eitel* factors to determine whether default judgment is appropriate.

### C.    The *Eitel* Factors Support Entry of Default Judgment

#### 1.    Possibility of prejudice to the SEC

The possibility of prejudice, the first *Eitel* factor, exists where a plaintiff "will likely be without other recourse for recovery" if it is not granted default judgment. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177; *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) ("[d]enying default judgment here would leave [plaintiff] without a proper remedy"). Here, the SEC seeks to enforce the securities laws against Defendants through permanent injunctions, disgorgement with prejudgment interest, and the imposition of a civil

monetary penalty against Hedonova Advisors. In the absence of a default judgment, and because Defendants have chosen not to participate in the litigation, the SEC "will be unable to fulfill its mandate to protect the investing public," demonstrating the possibility of prejudice if default is not granted. *SEC v. Neman*, No. CV-12-03142-BROPLAX, 2016 WL 6661174, at \*4 (C.D. Cal. July 15, 2016) (citation omitted).

### 2.    Substantive merits and sufficiency of the Complaint

Together, *Eitel*'s second and third factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1175 (citations omitted). Well-pleaded allegations are taken as admitted on a default judgment. *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986). As discussed below, the Complaint properly alleges violations of the securities laws at issue:

*Investments in Hedonova Are Securities:* The limited liability company membership interests in Hedonova offered and sold by Defendants are securities in the form of "investment contracts." (ECF 1 ¶¶ 15-16.) An investment contract includes any contract, transaction, or scheme in which a person: (1) invests money, (2) in a common enterprise, (3) with the expectation of profits to be derived from the efforts of the promoter or a third party. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). *Howey* should be interpreted flexibly and broadly, focusing on the "presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975).

The Hedonova offering satisfies *Howey*. From approximately November 2021 through October 2023, accounts in the name of Hedonova received approximately $12.5 million in deposits, including at least $3.8 million from investors. (ECF 1 ¶¶ 5, 62.) Defendants pooled investors' money into accounts with an online payment processor and an online money transfer service. (*Id.* ¶ 19.) Some of the pooled investor money was subsequently transferred into accounts held by Hedonova at various online and regional banks. (*Id.*)

The investors contributed their funds to a common enterprise with horizontal commonality. *See Hocking v. Dubois*, 885 F.2d 1449, 1459 (9th Cir. 1989) (Ninth Circuit "accepts either traditional commonality or . . . a strict version of vertical commonality."). "Horizontal commonality describes the relationship shared by two or more investors who pool their investments together and split the net profits and losses in accordance with their pro rata investments." *SEC v. Dalius*, No. 2:18-cv-08497-FWS-E, 2023 WL 3988425, at *8 (C.D. Cal. May 24, 2023). Here, Defendants represented to investors that their money would "purchase parts of the fund, called 'blocks,'" and that the investors would "make a profit when the overall value of [Hedonova] increases." (*Id.* ¶ 18.) Therefore, investors in Hedonova expected to pool their funds together and their fortunes were tied together as they would split Hedonova's profits and losses on a pro rata basis. *See SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 369 (S.D.N.Y. 2020) ("Horizontal commonality is established when investors' assets are pooled and the fortunes of each investor is tied to the fortunes of other investors as well as to the success of the overall enterprise.")

The investors also expected profits from the efforts of others. Hedonova investors relied on Defendants' claimed expertise with alternative investments to generate profits. Investors were not expected to take any action to generate profits beyond investing their money. (*Id.* ¶ 23.) Furthermore, the Ninth Circuit has "rejected a strict interpretation of this prong in favor of a more flexible focus on 'whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *SEC v. Rubera*, 350 F.3d 1084, 1091-92 (9th Cir. 2003) (quotations omitted). Accordingly, Hedonova's investments satisfy *Howey*.

*Anti-Fraud Violations*: Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, while Section 10(b) and Rule 10b-5 of the Exchange Act prohibit fraud in the purchase or sale of securities. Collectively, these provisions "forbid making a material misstatement or omission in connection with the offer or

sale of a security by means of interstate commerce." *SEC v. Hui Feng*, 935 F.3d 721, 734 (9th Cir. 2019) (quoting *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001)). A misstatement or omission is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *See Hui Feng*, 935 F.3d at 735-36.

The Complaint alleges facts showing that Defendants' misrepresentations and omissions were material and were intended to induce investments. The January 2021 PPM, website, and Forms ADV falsely represented to investors that Defendants had retained Big Four accounting firms as auditors, banked with well-known international banks, and used prominent financial services firms as administrators and custodians. (ECF 1 ¶¶ 27-28, 30, 37-38, 42, 50-54, 57-58.) Hedonova Advisors went so far as to list a non-existent Dublin affiliate of a Chicago-based financial services firm as its custodian of funds in its 2023 and 2024 Forms ADV. (*Id.* ¶¶ 52, 55.) Defendants claimed that the auditors and custodians held Hedonova to high standards (*id.* ¶¶ 50-51), misleading investors about the safety of their investments.

Defendants also claimed to use specific fine art and litigation finance investing platforms to make alternative investments on the Hedonova.io website, even though their known financial accounts reflect no transfers to either platform, and the fine art investing platform sent a cease-and-desist letter because the representations were untrue. (*Id.* ¶¶ 37-38, 48.) Hedonova Advisors' Forms ADV claimed that Hedonova's gross asset value grew from $704 million in 2023 to more than $823 million in 2024 (*id.* ¶¶ 44-45), but Hedonova never substantiated those numbers and none of its known financial accounts reflect the amount of activity claimed in the Forms ADV (*id.* ¶¶ 43, 46-47, 66).

Defendants were "makers" of numerous material misstatements. "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2001).

Hedonova was the maker of the PPMs. (ECF 1 ¶ 25.) Hedonova Advisors filed the Forms ADV. (*Id.* ¶¶ 6, 13, 41.) Defendants are both "makers" of the false statements on the Hedonova.io website because Hedonova maintained the website and Hedonova Advisors stated that it "control[s] the content" of the website in its Forms ADV. (*Id.* ¶¶ 34, 41.) "[I]n the ordinary course, attribution within a statement or implicit from the surrounding circumstances is strong evidence that a statement was made by . . . the party to whom it is attributed." *Janus*, 564 U.S. at 142-43.

Further, these misrepresentations and omissions were material to investors. The point of these misrepresentations was to present Defendants as more sophisticated, successful, and safe than they actually were. A reasonable investor would have wanted to know that: (1) Defendants were not clients of the reputable financial services firms identified on the website, January 2021 PPM, and Forms ADV (ECF 1 ¶ 59); (2) Defendants did not have relationships with the major alternative asset investing platforms they claimed to use to make such investments (*id.*); and (3) instead of investing in a fund with almost a billion dollars of gross asset value, he or she was really investing in a fund whose best "proof" of gross asset value was an undated portfolio allocation schedule reporting holdings with market values totaling only $79,304,244, about a tenth of the claimed amount (*id.* ¶¶ 46, 59).

The Complaint also alleges that Defendants engaged in interstate commerce by soliciting investments via the website, obtaining money from investors in various states, and receiving investor funds via regional and online banks, ACH transfers, payment processors, and money transfer services. (*Id.* ¶¶ 19, 24, 34-37, 63-65.)

Finally, Section 17(a)(2) of the Securities Act forbids obtaining money by means of any untrue statement of material fact or omission in the offer or sale of securities. *See Hui Feng*, 935 F.3d at 734. Defendants violated this provision when they obtained millions of dollars from investors in the securities of Hedonova by making the numerous material misstatements described above. Likewise, by intentionally making, disseminating, and directing others to make and/or disseminate

SEC'S MOTION FOR DEFAULT JUDGMENT    15

various material false statements, Defendants also employed a "device, scheme, or artifice to defraud," in violation of Rule 10b-5(a) and Section 17(a)(1), and engaged in a transaction, "act, practice, or course of business" that "operated as a fraud or deceit" on investors under Rule 10b-5(c) and Section 17(a)(3). *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1101-02 (2019); *see also Hui Feng*, 935 F.3d at 767-37; *Malouf v. SEC.*, 933 F.3d 1248, 1260 (10th Cir. 2019).

Section 206(4) of the Advisers Act makes it unlawful for an investment adviser "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4). Advisers Act Rule 206(4)-8 prohibits fraudulent or deceptive conduct with respect to investors in pooled investment vehicles. 17 C.F.R. § 275.206(4)-8. "Section 206(4) and Rule 206(4)-8 prohibit an investment adviser to a pooled investment vehicle from making an untrue or misleading statement or omission of material fact to investors." *SEC v. Moleski*, No. 2:21-cv-01065-SVW-E, 2021 WL 6752254, at *3 (C.D. Cal. Oct. 21, 2021). Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11).

Hedonova Advisors is an investment adviser to a pooled investment vehicle, Hedonova. (ECF 1 ¶¶ 13, 20.) "[F]acts showing a misleading statement or omission for purposes of a Section 10(b) and Rule 10b-5 violation will also support a violation of Section 206(4) and Rule 206(4)-8 given their parallel elements." *Moleski*, 2021 WL 6752254, at *3 (citing *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363 n.4 (9th Cir. 1993)). Hedonova Advisors is therefore liable under Section 206(4) and Rule 206(4)-8 for making the same false and misleading statements described above about Hedonova's business and the potential risks and rewards of investing in it.

*Defendants Acted with Scienter:* Violations of Securities Act Section 17(a)(1), Exchange Act Section 10(b), and Rule 10b-5 thereunder require a showing of

SEC'S MOTION FOR DEFAULT JUDGMENT    16

scienter, but only negligence is required for Section 17(a)(2) and (a)(3) violations. *Aaron v. SEC*, 446 U.S. 680, 691, 697 (1980). Scienter is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Scienter may be established by a showing of recklessness. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010). "Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id*. at 1093 (internal citations omitted). Recklessness may be inferred from circumstantial evidence. *Id.* at 1094 (citations omitted).

Defendants knew or were reckless in not knowing that their misrepresentations to investors about basic governance—where money was kept and how financial information was reported and reviewed—would go to the heart of investors' confidence in Defendants' activities. (ECF 1 ¶¶ 33, 61, 78, 83.) Defendants knew that they were not making any payments to the reputable firms they identified in the PPMs, Forms ADV, and Hednova.io website. (*Id.* ¶¶ 48, 68.) They knew they had received cease-and-desist letters from the fine art investing platform and one of the Big Four accounting firms demanding their logos be removed from their website. (*Id.* ¶ 38.) Yet Defendants doubled down on their false statements by removing from their website misrepresentations about their "Custodian" and making new false statements about an "Administrator." (*Id.* ¶ 51, 54-55, 57-58.) Defendants' pattern of claiming associations that did not exist shows that their conduct was at least reckless.

Given the evidence of Defendants' scienter, the SEC has also satisfied the negligence requirement for Sections 17(a)(2) and 17(a)(3) of the Securities Act. *SEC v. Beck*, No. 2:22-cv-00812-FWS-JC, 2024 WL 1626280, at *9, *11 (C.D. Cal. Mar. 26, 2024). "[A] showing of intentional or knowing conduct clears all thresholds." *Hui Feng*, 935 F.3d at 734, 736 (citing *Aaron*, 446 U.S. at 695-97). Scienter is similarly

SEC'S MOTION FOR DEFAULT JUDGMENT    17

not required to establish a violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. *See SEC v. Tellone Mgmt. Group*, No. 8:21-cv-01413-FWS-ADS, 2022 WL 18582314, at *15 (C.D. Cal. Dec. 19, 2022) (citing *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992)).

### 3. Amount at stake

Turning to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1176. In SEC injunctive actions, the court does not award damages, but can exercise its equity power to enjoin defendants or require them to disgorge ill-gotten gains. *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260-61 (9th Cir. 2013) (disgorgement is a form of equitable relief). As detailed below, the Complaint and the Declaration of SEC accountant Timothy T. Tatman, filed concurrently, establish that Defendants fraudulently obtained about $11,550,000 of investor money, which harmed the investors who have not received repayment.

### 4. Possibility of disputed facts

The fifth *Eitel* factor considers the possibility of a dispute as to any material facts. Upon entry of default, all well-pleaded facts in the Complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The allegations in the SEC's complaint establish that Defendants violated the federal securities laws. *See, e.g., SEC v. Baccam*, No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168, at *7 (C.D. Cal. June 14, 2017) (granting default judgment, where "the SEC filed a well-pleaded Complaint alleging facts sufficient to prevail on its claims" and default motion was "unopposed").

### 5. Possibility of excusable neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered.

SEC'S MOTION FOR DEFAULT JUDGMENT    18

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). Defendants were both personally served with the Complaint and Summons as evidenced by sworn affidavits. (ECF 17, 18.) For approximately eight months, Defendants, through prior counsel, engaged in the litigation and negotiated filings, such as the stipulations for expedited discovery and protective order (ECF 19, 34) and stipulated order of preliminary injunction (ECF 50). Former defense counsel's motion to withdraw and related filings demonstrate multiple efforts to inform Defendants of the consequences of becoming unrepresented. (ECF 65, 67, 71.) Finally, the SEC is serving Defendants with notice of this motion via their registered agents. Given the multiple notifications Defendants have received regarding the consequences of failing to defend this lawsuit, excusable neglect does not exist.

### 6.    Policy for deciding on the merits

Finally, the mere existence of Rule 55(b) indicates that the seventh *Eitel* factor, a preference for deciding on the merits, is not alone dispositive. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177. Indeed, Defendants' abandonment of the litigation makes a decision on the merits impractical, if not impossible. *See id*. Therefore, "[u]nder Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id*.

### D.    The SEC Is Entitled to the Relief It Seeks

In the Complaint, the SEC sought judgments permanently enjoining Defendants from future violations of the federal securities laws, a conduct-based injunction, disgorgement of ill-gotten gains and prejudgment interest, and a civil penalty against Hedonova Advisors. (ECF 1 at 17-18, Prayer for Relief.) Per Rule 54(c), the SEC seeks the same relief in this motion.

### 1.    Defendants should be permanently enjoined.

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), provide that upon proper showing by the SEC, a permanent injunction

SEC'S MOTION FOR DEFAULT JUDGMENT    19

shall be granted. To obtain a permanent injunction against future violation of the securities laws, the SEC must demonstrate that: (1) it has succeeded on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in the SEC's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (factors pertinent in assessing preliminary or permanent injunctive relief); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*); *SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024) (applying *Starbucks* to a SEC enforcement action).

As discussed in Section III.C.2 above, the SEC has demonstrated that it has succeeded on the merits. The remaining factors also favor the SEC. "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages." *U.S. v. Cal. Dep't of Corrections & Rehabilitation*, 737 F. Supp. 3d 977, 999-1000 (E.D. Cal. 2024). Congress has charged the SEC with enforcing the federal securities laws to prevent harm to the investing public. *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) (the SEC appears "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws."). Congress granted the SEC authority to adopt rules such as Rule 10b-5 and Rule 206(4)-8 "as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b); *see also* 15 U.S.C. § 80b-1 ("investment advisers are of national concern"). In determining the balance of the equities, a court must "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Here, Defendants engaged in blatant and repeated violations of the federal securities laws, making numerous material misstatements to investors. It is manifestly in the public interest to prevent

SEC'S MOTION FOR DEFAULT JUDGMENT   20

future violations of the federal securities laws that could irreparably harm future investors the same way Defendants harmed the investors here, and Defendants have no legitimate claim that such a prohibition would damage them.

### 2.    A conduct-based injunction is appropriate.

Defendants should also be permanently barred from participating in the issuance, purchase, offer, or sale of securities and required to make public disclosures as described in Section IV of the proposed judgment. The Exchange Act provides that SEC "may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). As discussed above, numerous investors were harmed by Defendants' use of false statements to obtain money. Hedonova Advisors submitted forms to the SEC including lies about itself and Hedonova. (ECF 1 ¶¶ 41-48.) Precluding Defendants from participating in the securities markets, and requiring them to make certain public disclosures, will serve to protect investors. *See SEC v. Nguyen*, No. 8:19-cv-01174-SVW-KES, 2024 WL 3381583, at *4 (C.D. Cal. Feb. 23, 2024) (issuing conduct-based injunction).

### 3.    Defendants should be held liable for disgorgement and prejudgment interest on a joint-and-several basis.

In *Liu v. SEC*, the Supreme Court reaffirmed the SEC's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." 140 S. Ct. 1936, 1940 (2020). *Liu* did not disturb the principle that "disgorgement 'need only [be] a reasonable approximation of profits causally connected to the violation.'" *SEC v. Drake*, No. 2:20-cv-00405 MCS (PLAx), 2021 WL 12299079, at *2 (C.D. Cal. Oct. 7, 2021) (quoting *Platforms Wireless*, 617 F.3d at 1096). Once the SEC establishes a reasonable approximation of defendant's net profits, the burden shifts to defendants to rebut that reasonable approximation. *Platforms Wireless*, 617 F.3d at 1096. In addition, after the Supreme Court decided *Liu*, Congress amended Exchange Act Section 21(d) to add subsections

(d)(5) and (d)(7), which expressly authorize courts to award disgorgement in SEC actions. *See* 15 U.S.C. § 78u(d)(5); (d)(7). These longstanding equitable principles and the recent statutory amendments justify ordering Defendants to disgorge their ill-gotten gains.[1]

The evidence shows that Hedonova fraudulently obtained approximately $11,550,000 from investors. (Declaration of Timothy Tatman ("Tatman Decl.") ¶ 8.) Defendants produced documents to the SEC on July 10, 2024 purporting to contain investment and withdrawal transaction detail for U.S. investors. (*Id.*) The SEC's accountant, Mr. Tatman, compared the files and then created one Excel worksheet capturing all unique transactions in both files to analyze Hedonova's U.S. investor activity from September 16, 2021 through July 8, 2024. (*Id.*) Mr. Tatman determined that Hedonova claimed to have raised approximately $18,083,382 from, and returned $6,533,759 to, U.S. investors during this period. As a result, the net benefit to Hedonova, by its own admission, is $11,549,622. (*Id.*) No deduction was made for Defendants' business expenses because the entire enterprise was fraudulent. *Liu*, 140 S. Ct. at 1945, 1950 (noting that the Court previously "carved out an exception [from net profit awards] when the entire profit of a business or undertaking results from the wrongful activity" or when expenses were merely "fueling a fraudulent scheme").

Accordingly, the proposed $11,549,622 in disgorgement is a reasonable approximation of Defendants' net profits, which if recovered, could compensate their investor-victims for their losses during the period covered by the Complaint. *See, e.g.*, *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL 541194 (9th Cir. Feb. 23, 2022) (unpublished order) (affirming disgorgement order where "Defendants failed to meet their burden of proving that any of the purported business expenses were actually incurred or were 'legitimate'"); *SEC v. Mizrahi*, No. CV 19-2284 PA,

---

[1] The disgorgement award sought here satisfies both this provision and *Liu* because the SEC will petition the Court to establish a fund to distribute, if feasible, any collected funds to harmed investors if the SEC collects the requested disgorgement.

SEC'S MOTION FOR DEFAULT JUDGMENT    22

2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020) (ordering disgorgement of a "reasonable approximation of [defendant's] net profits that are causally connected to his securities law violations").

Defendants should be held jointly and severally liable for disgorgement. Courts have "flexibility" to impose joint and several liability against "partners" engaged in "concerted wrongdoing." *Liu*, 140 S. Ct. at 1949; *see also SEC v. Smith*, No. CV 20-1056 PA (SHKx), 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020) (imposing joint and several liability for disgorgement where entities were under principal's common control and principal "used his ownership and common control" to carry out scheme). "[W]here two or more individuals or entities collaborate or have a close relationship in engaging in violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds." *Platforms Wireless*, 617 F.3d at 1098 (citation omitted).

Joint and several liability between Defendants is appropriate here. Hedonova Advisors was the SEC-registered investment adviser to Hedonova. (ECF 1 ¶ 6, 13.) Furthermore, Defendants claimed that the principals of Hedonova were also the control persons of, and persons with an ownership interest in, Hedonova Advisors. (*Id* ¶ 7.) Accordingly, the SEC requests that the Court order Defendants to pay $11,549,622 in disgorgement on a joint-and-several basis. (Tatman Decl. ¶ 8.)

Defendants should also pay prejudgment interest on the disgorgement. Disgorgement usually includes prejudgment interest, and courts order prejudgment interest to ensure that wrongdoers do not profit from the illegal activity. *See Platforms Wireless*, 617 F.3d at 1099. The SEC calculated prejudgment interest quarterly, beginning at the end of each calendar year, for the net benefit received by Hedonova during that calendar year, using the interest rate set forth in 28 U.S.C. § 6621(a)(2). Per that methodology, the prejudgment interest on the disgorgement amount of $11,549,622 is $1,388,122, for a total of $12,937,744 in disgorgement and prejudgment interest. (Tatman Decl. ¶¶ 9-10.) Since Hedonova Advisors is jointly

SEC'S MOTION FOR DEFAULT JUDGMENT     23

and severally liable with Hedonova, its total disgorgement with prejudgment interest is the same as Hedonova's. These amounts are an appropriate measure of Defendants' ill-gotten gains and should be disgorged:

### 4.    Hedonova Advisors should pay a substantial civil penalty.

Defendant Hedonova Advisors is liable for penalties under Section 20(d)(2) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act. *See* 15 U.S.C. § 77t(d)(2); § 78u(d)(3); § 80b-9(e). "Congress enacted civil penalty provisions to achieve the dual goals of punishment of the individual violator and deterrence of future violations." *See SEC v. Duncan*, No. CV 08-1323-VAP (OPx), 2009 WL 10670521, at *15 (C.D. Cal. July 6, 2009) (citations omitted); *SEC v. Jocelyn M. Murphy*, Case Nos. 21-55178, 21-55180, 2022 WL 4866712 (9th Cir. Oct. 4, 2022) (reiterating court's broad discretion to impose civil penalties within the statutory maximum). The amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2); § 78u(d)(3)(B); § 80b-9(e)(2). Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from similar conduct in the future, in assessing civil penalties, courts frequently apply the factors set forth in *SEC v. Stephen Murphy*, 626 F.2d 633 (9th Cir. 1980). *See, e.g.*, *SEC v. Johnson*, No. 5:20-CV- 01493-MCS-SHK, 2022 WL 17886033, at *17 (C.D. Cal. June 29, 2022). Those factors are (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of his assurances against future violations. *Id.*

The Securities Act, Exchange Act, and Advisers Act provide that penalties should be assessed according to a three-tier system. *See* 15 U.S.C. § 77t(d); § 78u(d)(3); § 80b-9(e). Each tier provides that a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation." *Id*. § 77t(d)(2); § 78u(d)(3)(B); § 80b-

SEC'S MOTION FOR DEFAULT JUDGMENT    24

9(e)(2). Third-tier penalties are appropriate here because they apply to violations that (1) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C); § 78u(d)(3)(B)(iii); § 80b-9(e)(2)(C). Hedonova Advisors' fraudulent conduct causing significant investor harm weighs in favor of imposing a third-tier penalty. *See, e.g., Johnson*, 2022 WL 17886033, at *17 (imposing third-tier penalties). "Courts frequently authorize civil penalties equal to the amount of disgorgement." *SEC v. BIC Real Estate Dev. Corp.*, No. 1:16-cv-00344-LJO-JLT, 2017 WL 1740136, at *6-7 (E.D. Cal. May 4, 2017) (imposing third-tier civil penalty in amount of defendant's ill-gotten gains) (collecting cases).

The SEC respectfully requests that the Court impose a civil penalty in the amount of $11,549,622, which falls within a third-tier penalty range and is equal to the amount of disgorgement. Hedonova Advisors' conduct, including lying on forms filed with the SEC, was egregious and knowing. Hedonova Advisors lied about basic aspects of Hedonova's operations and investments, and ultimately abandoned the litigation. As discussed above, Hedonova Advisors had a high degree of scienter, and its agents must have known that Hedonova was a sham. As a result, a third-tier penalty of $11,549,622 to Hedonova Advisors is appropriate.

## IV.    CONCLUSION

For all the foregoing reasons, this Court should enter Default Judgment against the Defendants.

Dated:  August 18, 2025                     Respectfully submitted,

                                            */s/ BeLinda I. Mathie*
                                            BeLinda I. Mathie
                                            Attorney for Plaintiff U.S. Securities
                                            and Exchange Commission

SEC'S MOTION FOR DEFAULT JUDGMENT     25

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff SEC, certifies that this brief does not exceed 25 pages, which complies with this Court's standing order.

Dated: August 18, 2025

Respectfully submitted,

*/s/ BeLinda I. Mathie*
BeLinda I. Mathie
Attorney for Plaintiff U.S. Securities and Exchange Commission

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

SECURITIES AND EXCHANGE COMMISSION
175 W. Jackson Blvd, Suite 1450, Chicago IL 60604
Telephone No. (312) 353-7390; Facsimile No. (312)353-7398.

On _August 18, 2025, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANTS HEDONOVA LLC AND HEDONOVA ADVISORS LLC** on all the parties to this action addressed as stated on the attached service list:

☐    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Chicago, Illinois, with first class postage thereon fully prepaid.

☐    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Chicago, Illinois.

☐    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  August 18, 2025           */s/ BeLinda I. Mathie*
                                 BeLinda I. Mathie

1

*SEC v. Hedonova LLC, et al.*
**United States District Court—Central District of California
Case No. 2:24-cv-05293-AB-E)**

**<u>SERVICE LIST</u>**

Hedonova LLC
c/o Northwest Registered Agent LLC
784 S. Clearwater Loop, Ste B
Post Falls, ID 83854

Hedonova Advisors LLC
c/o Northwest Registered Agent Service, Inc.
8 The Green, Ste B
Dover, DE 19901

2